James W. PARTAIN et al., Plaintiffs,

v.

The FIRST NATIONAL BANK OF MONTGOMERY, a body corporate, Defendant.

Civ. A. No. 3419–N.

United States District Court, M. D. Alabama, N. D.

March 5, 1973.

Robert S. Vance, Callaway & Vance, Birmingham, Ala., for plaintiffs.

M. R. Nachman, Jr., Steiner, Crum & Baker, Montgomery, Ala., for defendant.

## ORDER

JOHNSON, Chief Judge.

The three plaintiffs in this action are participants in the BankAmericard credit system operated by the First National Bank of Montgomery. In August of 1971, they brought a class action against

the bank claiming that during the two years prior to the filing of the suit the bank had charged a rate of interest on the credit extended through the BankAmericard system which was in excess of that rate allowed by state law and thus was in violation of Title 12, Section 85, of the United States Code.[1] On November 23, 1971, this Court entered an order granting defendant's motion for summary judgment, finding that the rate of interest charged by the bank each month on the accounts of the three named plaintiffs was not in excess of that allowed by state law for the class of loan in question. This order, D.C., 336 F.Supp. 65, was entered without prejudice to any unnamed members of the class proceeding in another action. The effect thus was to disallow the class aspect of the suit. On September 13, 1972, the Fifth Circuit Court of Appeals, 467 F.2d 167, reversed this Court's decision and remanded the case for further proceedings, holding that the bank had compounded interest in violation of state and federal law. The Court of Appeals, without discussion, treated the action as a class action, the class being composed of all holders of BankAmericards issued by the First National Bank.

On November 8, 1972, this Court entered an order which adopted the Fifth Circuit's treatment of the case as a class suit. The parties were ordered to submit proposals setting forth their recommendations on the best method of administering relief to the plaintiff class. Subsequently, the parties filed several motions which are now pending before the Court. The plaintiffs move for judgment on the issue of liability and, in addition, ask that the Court enter an order pursuant to Rule 23 that this cause proceed as a class action. Defendant moves the Court to disallow maintenance of the suit as a class action. Oral argument on these motions was presented by the parties in a hearing held December 13, 1972. Since then, additional material, including affidavits, depositions and memoranda, has been presented to the Court on the issue of class treatment.

The defendant argues strenuously that class treatment should be denied. This argument has not previously been presented to this Court. Nor was the issue argued before the Court of Appeals. In light of the unusual posture of the case and the burden which class treatment will impose upon the defendant, it seems appropriate at this time, in the interest of fairness, that this Court give full consideration to the arguments and evidence now presented by the parties.

Rule 23 of the Federal Rules of Civil Procedure sets out certain prerequisites which must be met if an action is to be maintained as a class action. The present suit falls within the category of class action described by section (b)(3) of Rule 23. In order to grant class treatment, the Court must, among other things, find that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."[2]

---

1. Section 85 reads in pertinent part:
   Any association may . . . charge on any loan . . . interest at the rate allowed by the laws of the State . . . where the bank is located . . . and no more, except that where by the laws of any State a different rate is limited for banks organized under State laws, the rate so limited shall be allowed . . . .

2. Fed.R.Civ.P. 23(b)(3). The requirements of Rule 23(a) are clearly met in this case. The class of some 20,000 is so numerous that joinder of all members is impracticable, there are questions of law and fact common to the class, the claims of the representative parties are typical of the claims of the class, and the representative parties will fairly and adequately protect the interests of the class.

Defendant argues that common questions do not predominate because damages to each member of the class will differ and must be proved separately.[3] Predominance, however, does not mean that the common questions must be dispositive of the entire litigation. See, e. g., Dolgow v. Anderson, 43 F.R.D. 472, 490 (E.D.N.Y.1968). The function of the predominance element is to determine whether the individual questions in a case are so overwhelming as to destroy the utility of the class action. In any class action, consideration must ultimately be given to individual claims. The necessity for separate trials to determine individual damages does not necessarily destroy the usefulness of the class action device. See, e. g., Advisory Committee on Rule 23, Proposed Amendments to the Rules of Civil Procedure, 39 F.R.D. 69, 103 (1966); Frankel, Some Preliminary Observations Concerning Civil Rule 23, 43 F.R.D. 39, 47 (1968). Indeed, many suits have been allowed to proceed as class actions even though split trials were necessary. See, e. g., Gold Strike Stamp Co. v. Christensen, 436 F.2d 791 (10th Cir. 1970); Green v. Wolf Corp., 406 F.2d 291 (2nd Cir. 1968).

In this case, however, no separate trials will be required on the issue of damages. Damages can be mathematically calculated on the basis of the information presently contained in the bank's records.[4] With the aid of a computer, the exact amount due each member of the class can be quickly and accurately determined without the need to further burden the Court with the presentation of evidence in each individual case.[5]

Defendant, however, argues that the presence of valid counterclaims, which it intends to file against a number of the proposed class if the class action is approved, will preclude the automatic calculation and distribution of damages to the class and necessitate separate trials on the issue of the counterclaim in those cases where such is made. Defendant estimates the number of counterclaims as approximately 700 against accounts that have been charged off by the bank as uncollectible and approximately 1800 against accounts currently delinquent in some degree. The potential assertion of counterclaims against these few members of the proposed class cannot be allowed to defeat an otherwise valid class action when to do so would effectively deprive thousands of class members of the relief to which they are entitled.[6] At the same time, the rights of the defendant should be protected. It appears appropriate, therefore, in reaching an equitable solution in this case, that the Court exercise its discretion under Rule 23 to define the scope of the class by deleting from the proposed class all those persons previously having BankAmericard accounts with the bank whose accounts have been charged off by the bank.[7] See Philadel-

---

3. Section 86, Title 12, of the United States Code sets forth the penalty for violation of Section 85. Two separate classes of award are contemplated. Where usurious interest has been taken, received, reserved, or charged, there shall be a forfeiture of the entire interest agreed to be paid. Where usurious interest has been paid, the person paying it may recover back twice the amount of the interest paid, legal as well as illegal.

'4. The records contain the monthly statements of each BankAmericard account holder for the two-year period in question. The monthly statements list the pre-vious month's balance, payments, charges, finance charge, and the new balance.

5. Not all interest charged by the bank on its BankAmericard accounts was in violation of Section 85, but only that which was compounded. The computer can be programmed to include only this interest in damages.

6. The claims here, taken individually, as a practical matter are too small to justify legal action. See n. 9, infra, and accompanying text.

7. Under the bank's policy, when an account has been billed eight times and is seven payments delinquent it is charged off,

phia Elec. Co. v. Anaconda American Brass, 43 F.R.D. 452 (E.D.Pa.1968); 3B J. Moore, Federal Practice ¶ 23.45[2], at 758 n. 29. As to those accounts which are presently delinquent but which have not yet been charged off, the defendant may set off the damages owed in each case by reducing the balance outstanding on the account by the amount of damages due.[8] This holding is without prejudice to these members of the class challenging in some other action the validity of the bank's claims against them.

With the calculation and distribution of damages thus provided for, and since other issues of fact and law in this case are common to all members of the proposed class,[9] common questions clearly predominate.

The defendant further asserts that a class action is not a superior method of adjudicating the claims in this suit. The bank argues that any individual desiring to file a claim may do so, and that class treatment will result in a total award greatly burdensome to the defendant and unrelated to any damage to the proposed class. As authority, the defendant cites a line of consumer credit cases under the Truth-in-Lending Act, 15 U.S.C. § 1640(e), in which class action treatment has been disallowed. The principal case in this line is Ratner v.

Chemical Bank New York Trust Co., 54 F.R.D. 412 (S.D.N.Y.1972), in which plaintiff sought to represent a class estimated at 130,000. The Truth-in-Lending Act provides for a minimum recovery of $100 if a violation is proven, without proof of actual damages, plus costs and a reasonable attorney's fee. The court noted that these provisions represent a special and particular authorization wherein Congress has created a species of private attorney general to participate prominently in enforcement of the Act. In concluding that a class action was not superior to individual suits, the court emphasized that the incentive of class action benefits was unnecessary in view of the Act's provisions for minimum recovery plus costs and attorney's fees. The court considered that class action treatment, allowing thousands of statutorily fixed minimum recoveries, would be essentially inconsistent with the remedy provided by Congress as a means of private enforcement of the Truth-in-Lending Act.[10]

While the instant case can be distinguished from *Ratner* and other Truth-in-Lending cases in several ways, one difference is compelling. The National Bank Act, 12 U.S.C. §§ 85, 86, provides neither for a minimum recovery nor for an award of costs and attorney's fees. In the absence of such a statutory incen-

---

and if the customer has assets it is referred to an attorney for collection.

It appears from the evidence that employees of the bank who have BankAmericard accounts are subject to a reduced finance charge of only ½ of 1% per month, the regular finance charge being 1½% per month. The interest charged the employees is, however, compounded in violation of the law, and employees, therefore, are included in the class.

8. Should damages exceed the balance outstanding, the difference must be paid to the account holder.

9. With the exception of bank employees mentioned above, the contracts between the bank and all those having BankAmericard accounts are in all material respects identical. Finance charges are

computed on the same basis for each account. Consequently, the issues raised by a challenge to the validity of the interest rate charged are common to account holders.

10. In addition, concern was expressed that the $13,000,000 estimated recovery, which was unrelated to any damage to the class, might destroy the defendant financially. Several cases have followed this holding. *See, e. g.,* Wilcox v. Commerce Bank, 55 F.R.D. 134 (D.Kansas 1972); Rogers v. Coburn Finance Corp., 54 F.R.D. 417 (N.D.Ga.1972). *Contra,* LaMar v. H & B Novelty & Loan Co., 55 F.R.D. 22 (D.Oregon 1972); Katz v. Carte Blanche Corp., 53 F.R.D. 539 (W.D.Pa.1971), appeal docketed, No. 72–1054, 3rd Cir., Jan. 1972.

tive, the class suit provides small claimants like plaintiffs in this case the only practicable method of obtaining judicial consideration of their grievances. The potential recovery is too small to justify individual litigation.[11] Thus, if a class action is denied in this case, one of the principal functions of Rule 23—to provide a means of vindicating wrongs which, although involving only small amounts individually, affect a large number of people—will be thwarted. *See, e. g.,* Eisen v. Carlisle & Jacqueline, 391 F.2d 555 (2nd Cir. 1968); Shields v. First National Bank, 56 F.R.D. 442 (D.Ariz.1972); Dolgow v. Anderson, 43 F.R.D. 472 (E.D.N.Y.1968); Kaplan, A Prefatory Note, 10 B.C.Ind. & Comm.L. Rev. 497 (1969); Advisory Committee on Rule 23, *supra,* 39 F.R.D. at 104. Class treatment in this case, far from being inconsistent with the remedy provided by Congress in Title 12, Section 86, makes that remedy accessible to the plaintiffs.

■ The superiority prerequisite requires a determination that a class suit would be the best way of channeling and adjudicating claims. It is a comparative requirement which presumes the availability of other methods of adjudication. Only in rare instances, such as where the expense of maintaining the action would exceed any recovery which might accrue to the class members, or where other factors would make a class suit completely unmanageable, is a court justified in denying class treatment when

to do so effectively denies access to the courts.

The expense of maintaining this action is liberally estimated at approximately $100,000,[12] which is far less than the total expected recovery, based on a conservative estimate, of close to $1,000,000.[13] The cost of administering relief, then, quite clearly provides no ground for denying class treatment.

■■ Whether the class is otherwise manageable depends on several factors, including the size of the class, whether notice can be reasonably effected and whether damages can be adjudicated and relief awarded in an acceptable manner. Here the class of approximately 20,000 is relatively small compared with many class actions. The names and addresses of the members of the class are contained in the records of the bank and can be ascertained at a reasonable cost. By including a notice in the monthly bill of each current account holder, the cost of providing the required individual notice to all members of the class can be considerably reduced and should not exceed $3,000. As previously indicated, individual damages can be precisely calculated from the bank's records through the use of a computer. There will be no necessity for members of the class to file proof of claim forms. Once damages are calculated, checks can be mailed by the bank directly to class members. The appointment of a master will not be required, since the mechanical aspects of administering relief are relatively sim-

11. Named plaintiffs in this case will recover an average of approximately $50 each. The other commonly suggested alternatives of intervention or a test case are not feasible here.

12. This figure includes an estimate of the cost of notice, the cost of calculating and distributing damages, and attorney's fees.

13. This assumes a class of 20,000 with an average recovery of $50 per member. The estimate is based on a preliminary determination that the entire finance charge computed by the bank is interest.

This cost as a percentage of total expected recovery compares favorably with other suits approved as class actions. *See, e. g.,* Eisen v. Carlisle & Jacqueline, 52 F.R.D. 253 (S.D.N.Y.1971) ($500,000 cost of administration versus $22,000,000 total recovery); Cherner v. Transitron Electronic Corp., 201 F.Supp. 934 (D. Mass.1962) (total expense of approximately $1,117,000 versus settlement fund of $5,300,000); Illinois Bell Telephone Co. v. Slattery, 102 F.2d 58 (7th Cir. 1939) (cost of refunding equal to $2,-700,000 versus total refund of $18,798,-000).

ple and can be carried out by the parties and their respective attorneys. In short, this case does not approach the complexity of many class actions which have previously been allowed by the courts. *See, e. g.,* Eisen v. Carlisle & Jacqueline, 391 F.2d 555 (2nd Cir. 1968); City of Philadelphia v. American Oil Co., 53 F. R.D. 45 (D.N.J.1971); State of West Virginia v. Charles Pfizer & Co., Inc., 314 F.Supp. 710 (S.D.N.Y.1970); In re Multidistrict Private Civil Treble Damage Antitrust Litigation Involving Motor Vehicle Air Pollution Control Equipment, 14 F.R.Serv.2d 420 (C.D.Cal. 1970). It is the conclusion of this Court, therefore, that a class action is a superior method for adjudicating the claims in this suit. *Accord,* Cohen v. Dist. of Columbia Nat. Bank, 16 F.R. Serv.2d 848 (D.D.C.1972); Mize v. First Nat. Bank, Civil No. 72S–25(R) (S.D. Miss., filed Sept. 29, 1972); Zachary v. Chase Manhattan Bank, 52 F.R.D. 532 (S.D.N.Y.1971); Rademacher v. Town & County Charge, Civil No. 70C 194 (N.D.Ill., filed Oct. 9, 1970).

Since the Court of Appeals has already ruled against defendant on the merits of this case, the cost of notice will be taxed as costs against the defendant. *See* In re Antibiotic Antitrust Cases, 333 F.Supp. 278, 290 (S.D.N.Y. 1971); Berland v. Mack, 48 F.R.D. 121 (S.D.N.Y.1969). Although judgment has not yet been entered, the defendant may properly be ordered to pay for the cost of notice at this time. The plaintiffs' motion for judgment on the issue of liability will be denied so that members of the class may have an *opportunity* after notification to remove themselves from the class if they wish or, in the alternative, to join in the litigation of the issues remaining in the case.

Accordingly, it is the order, judgment and decree of this Court that this suit be and the same is hereby allowed to proceed as a class action. With the exception of charged off accounts noted above, the class is composed of all persons having BankAmericard accounts with the First National Bank at any time during the two years immediately preceding the filing of this suit, to whom interest on these accounts was charged during this time and by whom interest was paid.

It is further ordered that within sixty days of the date of this order defendant shall mail a copy of the notice attached to this order to each member of the class. No other communication of any sort concerning this suit is to be sent by the defendant to members of the class unless by permission of the Court.

It is further ordered that plaintiffs' motion for judgment on the issue of liability be and the same is hereby denied.

It is further ordered that this case be and the same is hereby certified for appeal pursuant to 28 U.S.C. § 1292. All proceedings in this Court are hereby stayed pending possible appellate review of this order.

## NOTICE OF PENDENCY OF CLASS ACTION

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Please Take Notice:

1. James W. Partain, Walter E. Willis, Jr., and Mrs. Edna M. Wooten have brought an action in this Court against The First National Bank of Montgomery seeking to recover damages under Title 12, Section 86 of the United States Code for usurious interest allegedly charged on BankAmericard credit card accounts. The complaint in this cause alleges that the defendant bank charged interest on its credit card accounts between August 11, 1969, and August 10, 1971, greater than that allowed by law and that, under the provisions of the above cited federal statute, all BankAmericard account holders are entitled to recover twice the amount of interest charged between the above dates and paid. The defendant has denied liability.

2. Partain, Willis and Wooten allege that they brought this action not only on behalf of themselves but also on behalf of others similarly situated, that is:

All persons having BankAmericard accounts with the First National Bank at any time between August 11, 1969, and August 10, 1971, to whom interest on these accounts was charged between these dates and by whom interest was paid.

3. This Court has issued an order finding and determining that this action was properly instituted and shall in the future be maintained as a class action for the benefit of those persons described in paragraph 2 above.

4. Any recovery in this action, less court-approved attorneys' fees and expenses, will be shared by members of the class and all members of the class will be bound by the judgment in this case, whether favorable or not.

5. If you do not wish to be included in the class, the Court will exclude you from the class if you file written notice requesting exclusion with the Clerk of the United States District Court, Montgomery, Alabama 36101, postmarked not later than the —— day of ——— 1973, in which event you will be excluded and will not participate in any recovery in this case nor be bound by the judgment in this case.

6. If you take no action, your interests will be represented by the plaintiffs and their counsel. Any member of the class who does not request exclusion may, however, enter an appearance through his own counsel within 20 days from receipt of this notice.

7. The court file in this case is available for your inspection at the offices of the Clerk of the United States District Court, United States Courthouse and Post Office Building, Montgomery, Alabama.

8. The attorneys representing the class are Callaway and Vance, 933 Frank Nelson Building, Birmingham, Alabama 35203.

9. Any inquiry by you concerning this matter should be directed to your own personal counsel or to the attorneys for the plaintiffs rather than to the Clerk of this Court.