Joseph W. COSGROVE, Jr., Ind., etc.

v.

**FIRST & MERCHANTS NATIONAL BANK et al.**

Civ. A. No. 74–0064–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Sept. 16, 1975.

---

Henry E. Howell, Jr., Howell, Anninos, Daugherty & Brown, Norfolk, Va., for plaintiff.

F. Claiborne Johnston, Jr., William R. Cogar, Richmond, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

· Plaintiff brings this alleged class action against the defendant First & Merchants National Bank ("F & M")[1] charging it with violations of the usury statutes of the Commonwealth of Virginia and of the National Bank Act, which incorporates the state usury statutes by reference.[2] 12 U.S.C. §§ 85, 86 (1970); Va.Code §§ 6.1–320–21, 6.1–326 (Repl.Vol.1973). The matter comes before the Court upon the defendant's motion to dismiss for lack of subject-matter jurisdiction. The defendant has moved, in the alternative, for the Court

---

1. The complaint also named the First and Merchants Corporation, F & M's holding company, as a party defendant. Upon the motion of that party, consented to by the plaintiff, First and Merchants Corporation was dismissed from the suit by order of the Court dated May 15, 1974.

2. Plaintiff also alleged in his complaint that F & M had failed to make disclosures required by the Consumer Credit Protection Act, 15 U.S.C. § 1637. Upon plaintiff's motion and with the defendant's consent, this count was dismissed without prejudice by order of the Court dated December 18, 1974.

to abstain from further consideration of the issues raised in the action until such time as the plaintiff has presented the issues to and had such issues adjudicated in the courts of the State of Virginia. Also before the Court are the plaintiff's motion to define the class and the method of notice to the class, and his motion to compel answers to various interrogatories objected to by the defendant.

The plaintiff alleges that jurisdiction is conferred upon the Court by 12 U.S.C. § 86 and 28 U.S.C. §§ 1337, 1355 without regard to the amount of the claim. The Court concludes that jurisdiction to entertain this action is conferred on the Court by 28 U.S.C. § 1337.[3] Congress regulates nationally chartered banks under the authority of the Commerce Clause, and, thus, 12 U.S.C. §§ 85, 86, as provisions of the National Bank Act, are portions of an "[a]ct of Congress regulating commerce" within the meaning of Section 1337. *Brown v. First National City Bank,* 503 F.2d 114 (2d Cir. 1974); *Burns v. American National Bank & Trust Co.,* 479 F.2d 26 (8th Cir. 1973); *Partain v. First National Bank of Montgomery,* 467 F.2d 167 (5th Cir. 1972). The defendant erroneously argues that such an interpretation of § 1337 will destroy the effect of the last sentence of 28 U.S.C. § 1348.[4] It is asserted that once it is held that regulatory provisions of the National Bank Act support federal court jurisdiction through § 1337, all actions by or against national banks will be cognizable in federal court in spite of contrary language in § 1348. Section 1348 is intended to divest federal courts of jurisdiction in actions by or against nationally chartered banks that depend solely on the bank's *creation* by an act of Congress for jurisdiction. *Burns v. American National Bank & Trust Co., supra,* 479 F.2d 26, 27 (8th Cir. 1973). However, Congress *regulates* nationally chartered banks pursuant to the Commerce Clause. Those sections of the National Bank Act that specify the usury limitations applicable to nationally chartered banks are regulatory provisions, and, therefore, actions involving those provisions are cognizable in federal courts under § 1337. Section 1348 remains viable in that it restricts federal court jurisdiction in those cases that involve a nationally chartered bank but no congressional regulatory statute.[5]

The defendant has also asked the Court to abstain from further consideration of the issues raised in the case until the courts of the State of Virginia have had a chance to rule on the issues. The major issue in the case is the applicability of Virginia's usury statutes, Va.Code §§ 6.1–320–21 (Repl. Vol.1973), to the "initial charge" of two per centum on each cash advance made to the plaintiffs under the defendant's open-ended credit plan, "BankAmericard." *See Cosgove v. First & Merchants National Bank,* No. 74–0064–R

---

3. 28 U.S.C. § 1337 provides:
   The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies.

4. 28 U.S.C. § 1348 provides:
   The district courts shall have original jurisdiction of any civil action commenced by the United States, or by direction of any officer thereof, against any national banking association, any civil action to wind up the affairs of any such association, and any action by a banking association estab-

lished in the district for which the court is held under Chapter 2 of Title 12, to enjoin the Comptroller of the Currency, or any receiver acting under his direction, as provided by such chapter.
   *All national banking associations shall, for the purpose of all other actions by or against them, be deemed citizens of the states in which they are respectively located.* (Emphasis added).

5. For example, suits against nationally chartered banks in tort for injuries suffered by a customer in the bank would not typically be cognizable in federal courts.

(E.D.Va., Memorandum and Order, Jan. 6, 1975). The fact that state law controls the issue, however, is not enough, without more, to justify invoking the abstention doctrine. *See Propper v. Clark*, 337 U.S. 472, 486–492, 69 S.Ct. 1333, 93 L.Ed. 1480 (1949); *cf. Meredith v. City of Winter Haven*, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (diversity case); *Martine v. State Farm Mutual Auto Ins. Co.*, 375 F.2d 720 (4th Cir. 1967) (diversity case). Furthermore, abstention is not favored, for remission to state courts involves substantial delay and expense, and the chance is slight that the state court determination and the federal court determination will be significantly different. *See Baggett v. Bullitt*, 377 U.S. 360, 378–79, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1969); *Chicago v. Atchison, T. & S. F. Ry. Co.*, 357 U.S. 77, 84, 78 S.Ct. 1063, 2 L.Ed.2d 1174 (1958).

[6] The defendants rely on dicta in *Brown v. First Nat'l. City Bank*, 503 F. 2d 114 (2d Cir. 1974), which suggests, in a case similar to this that abstention may be appropriate under the *Burford* doctrine. *See Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). In *Burford*, jurisdiction was declined to avoid interference with a state's administrative policy-making process, a consideration not present in this case. A ruling on the application of the Virginia usury statutes to the facts of this case will not substantially affect any of Virginia's regulatory systems; the question involved in the instant case is a narrow one of classification. The defendant also suggests that support for abstention can be found in *Fralin & Waldron, Inc. v. City of Martinsville*, 493 F.2d 481 (4th Cir. 1974), and *AFA Distributing Co., Inc. v. Pearl Brewing Co.*, 470 F.2d 1210 (4th Cir. 1973). However, both those cases involved federal constitutional challenges to state law that could be avoided by a state adjudication. The significance and permanence of constitutional adjudications and the policy of avoiding needless friction between federal and state governments justify abstention in such cases. However, no federal constitutional question is presented in this case; the interpretation of a congressional regulatory statute is in issue. In conclusion, the Court finds no exceptional circumstances which justify abstention. *See generally* 1A *Moore's Federal Practice* ¶ .203(2), at 2123–24 (1974).

The plaintiff seeks to have the action declared and certified to be a class action, and moves the Court to define and prescribe the class and to order the method of notice. The alleged class consists of all those account holders who held BankAmericard accounts with the defendant bank at any point in time during the two years immediately preceding the filing of the action, and those who also continue to hold the aforesaid accounts at the present time. Plaintiff also asks that it be allowed to mail notice of the action in the monthly account statements of the defendant bank. The defendant has answered by alleging that the practice of charging an initial two percent fee on cash advance transactions was eliminated on February 1, 1974, four days before this suit was filed. Defendant also alleges, in its response to the plaintiff's motion to define the class and the method of notice to the class, that less than ten per cent of its customers holding BankAmericard accounts during the period in question obtained cash advance balances, and that sending notice to all persons during the period in question who were or are BankAmericard customers would be unwarranted and prejudicial to the defendant's normal collection efforts. Finally, the defendant strenuously argues that the action is not properly maintainable as a class action within the limits of Rule 23, Federal Rules of Civil Procedure.

The Court finds the alleged facts to support a class action within the requirements of Rule 23. The class shall be composed of those BankAmeri-

card holders with non-delinquent accounts that, between the dates of February 4, 1972 and February 1, 1974, were charged an initial two per cent fee by the defendant on cash advancements made pursuant to the BankAmericard program. The plaintiff is directed to gather the relevant names and addresses from the records of the defendant, and mail a proper notice to each class member within the requirements of Rule 23(c)(2). The Court's ruling in this regard is based on the following conclusions:

The defendant argues, first, that the right to recover a penalty for usury is a personal right, and will not support class actions. In support of the contention, defendant cites several state and federal cases that hold a usury cause of action to be nontransferable, e. g. *Pardoe v. Iowa State National Bank*, 106 Iowa 345, 76 N.W. 800, 802 (1898), and several state usury cases that hold the usury claims may not be aggregated into a class action. *E. g., Liddell v. Litton Systems, Inc.*, Miss., 300 So.2d 455 (1974). These cases are to be distinguished from the present one. If a judgment is collected by the plaintiffs, it is disbursed amongst the class members; each member recovers on his personal claim. In a Rule 23 class action, the claims of the members are not transferred or otherwise assigned to the named plaintiffs; the named plaintiffs' claims merely typify the claims of the class members. Those state courts that refused to recognize claims for usury in class actions were decided within the framework of the traditional equity form of class action, rather than the modern class action form of Rule 23.[6] The traditional form requires a common-

ality of ownership or interest among members of the class, and that requirement has been considerably loosened by the language of Rule 23 which allows class actions if "there are questions of law or fact common to the class." The personal nature of a usury claim does not act to prohibit the aggregation of those claims in a class action suit. At least two federal courts have allowed class actions based on usury violations under the National Bank Act. *Partain v. First National Bank of Montgomery, supra,* 59 F.R.D. 56 (M.D.Ala.1973); *Zachary v. Chase Manhattan Bank,* 52 F.R.D. 532 (S.D.N.Y.1971).

The defendant also argues that subdivision (b)(3) of Rule 23 does not provide a basis for the plaintiff's alleged class action because there is no predominance of common questions of fact or law among the claims of the class members, and because a class action is not superior to other methods for the fair and efficient adjudication of the controversy. The gravamen of the plaintiff's case is that the defendant illegally imposed a two (2) per cent charge on cash advances obtained by its BankAmericard customers during the two year period immediately preceding the institution of this suit. The defendant submits three defenses: first, defendant alleges, assuming *arguendo* that the two (2) percent fee is "interest" and, therefore, within the scope of the National Bank Act, that section 6.1–321 of the Code of Virginia[7] specifically permits banks within the state to charge a two (2) per cent investigation fee on all loans; second, defendant asserts that the "investigation fee" permitted by § 6.1–321 of the Code of Virginia is a fee for something other than the use of

6. A Michigan state court, applying a class action device modeled after Rule 23, has allowed a class action based on usury violations. *Grigg v. Michigan National Bank,* No. 15821 (Mich.Ct.App.1973).

7. Section 6.1–321 of the Code of Virginia provides:

In addition to the charges permitted by § 6.-1–320 a bank may charge an investigation fee not exceeding two per centum of the amount of the loan or loans not exceeding one thousand dollars with a minimum charge of one dollar.

money or forbearance from the collection of monies due and is, accordingly, not within the meaning of the term "interest" under 12 U.S.C. § 85; and third, defendant contends that the charges about which plaintiff complains are well within the "minimum loan or discount fee" provisions of § 6.1–320 of the Code of Virginia.[8] In considering defendant's motion to dismiss, the Court noted on January 6, 1975, that it "believes the plaintiff may be correct both in arguing that fees incidental to the lending of money are within the ambit of the National Bank Act and in interpreting § 6.-1-321 to entitle lenders to investigation fees of two (2) per cent only when something other than internal procedures are utilized to determine a borrower's credit status." *Cosgrove v. First & Merchants National Bank*, No. 74–0064–R (E.D.Va., Order and Memo., at 6–7, Jan. 6, 1975). The defendants argue that such a position requires a determination of the precise action taken by the defendant in connection with each individual cash advance obtained by members of the purported class during the period in question. The fact that questions peculiar to each individual member of the class may remain after the common questions have been resolved does not, by itself, mandate a refusal to grant class certification. *Dolgow v. Anderson*, 43 F.R.D. 472, 490 (E.D.N.Y. 1968), *rev'd on other grounds*, 438 F.2d 825 (2d Cir. 1970). The plaintiffs allege that each class member is subject to the application by the defendant of a consistent *policy* that charges a two per cent fee for each transfer, without regard to whether an investigation was conducted. Whether this policy violated the National Bank Act is a common question of law and fact predominating over those affecting individual members.

Defendants also argue that a class action is not superior to other available methods for the fair and efficient adjudication of the controversy. It is asserted that Rule 13 will require the defendant to assert any existing counterclaims it might have against unnamed members of the class, causing the action to become unmanageable. The potential assertion of counterclaims against a few delinquent account holders should not be allowed to defeat an otherwise valid class action on behalf of numerous other class members. The individual claims involved in the suit are very small, and there is a substantial probability that they will not be presented to a court if the class members are forced to proceed individually. It is well established that Rule 23 was intended to open up the federal courts to the plaintiffs with small but valid claims. *See Dolgow v. Anderson, supra,* 43 F.R.D. 472, 484 (1968), *rev'd on other grounds* 438 F.2d 825 (2d Cir. 1970). Accordingly, the Court will define the class to exclude all those persons previously having BankAmericards whose accounts have become delinquent, and have been cancelled by the defendant. See *Partain v. First National Bank of Montgomery, supra,* 59 F.R.D. 56, 59 (M.D.Ala.1973).

Finally, defendant argues that the small recoveries in issue will be largely eliminated by the administrative

---

8. Section 6.1–320 of the Code of Virginia, in relevant part, provides:

Any bank . . . may loan money . . . at a rate not exceeding one half of one per centum for thirty days and may charge a minimum loan or discount fee of five dollars on loans or discounts, which minimum fee may not be charged on a renewal except after the passage of ninety days after the last imposition of such minimum charge, and may receive such interest in advance; . . . and provided, further that any bank may charge a rate not exceeding one per centum per month on daily balances, or on maximum calendar or fiscal monthly balances, under a written contract for revolving credit on any plan which permits an obligor to avail himself of the credit so established, and may also charge as a service fee a sum not exceeding twenty-five cents for each check, draft, or other order on the credit so established . . . . .

costs of the suit. Several judges have indicated that large administrative costs that swallow up potential recovery payments to individual class members may justify the dismissal of the class action. *E. g., In re Hotel Telephone Charges,* 500 F.2d 86, 92 (9th Cir. 1974); *Eisen v. Carlisle & Jacquelin (Eisen III),* 479 F.2d 1005, 1017 (2d Cir. 1973)(dicta); *Considine v. Park Nat'l Bank,* 64 F.R.D. 646, 648 (E.D.Tenn.1974). While the Court recognizes that the individual recoveries in this action will be small, perhaps even *de minimus,* if the action is successful, any action cancelling the suit on this basis is rightfully the decision of the class members and their representatives. Individual litigants have been known to vindicate their rights at the expense of their pocketbooks, and class litigants should be afforded the same privilege. However, class litigants should be provided with enough information to make an informed choice in such a situation. In other words, the notice sent to all class members who are identifiable should contain information on the approximation of projected recovery, taking into account prospective attorney fees and other administrative costs. The information need not be impeccably accurate as long as it is a reasonable estimate, and the information need not be tailored to the individual class member as long as it contains average figures, or rates of recovery on an individual scale. If the class members have no desire to support the suit, they may elect to be excluded from the class under the provisions of Rule 23(c)(2), (3), Federal Rules of Civil Procedure. Indeed the class representatives may conclude that the initial monetary outlay for notice is such as to preclude his or their acting in such a capacity.

Although the plaintiffs assert that the class should be composed of all those customers presently holding BankAmericard accounts, the defendant has answered that the practice of charging the two per cent fee on cash advances was eliminated on February 1, 1974. The plaintiffs have failed to controvert the change in procedure in any of its later correspondence to the Court. Accordingly, the Court finds that the practice has been discontinued as of February 1, 1974 and will limit the class to include only those bank customers who received a cash advance through their BankAmericard accounts with the defendant bank in the two year period beginning on February 4, 1972 and ending on February 1, 1974. The plaintiffs, if they so desire, are given leave to seek an amendment of this finding by responding with affidavits and any other documentation they may wish to provide. Furthermore, since the class is defined by an elapsed period of time, the plaintiffs' suggested method of notice—inserting copies of the notice in the bank's next account statements—is inappropriate. It would exclude those members of the class that have cancelled their membership in the BankAmericard account system, and include non-members of the class that have never received cash advances or that have received cash advances after February 1, 1974.

The defendant, it is alleged, has failed to adequately respond to the plaintiffs' first set of interrogatories, and the plaintiffs move for a court directive compelling a response. Since the defendant has not replied to plaintiffs' motion, the Court will allow the defendant ten days in which to respond before a ruling is announced in the matter.

An appropriate order will issue.