# CONTINENTAL NATIONAL BANK OF MEMPHIS *v.* BUFORD.

### ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 60. Argued November 6, 1903.—Decided November 16, 1903.

On every writ of error or appeal the first and fundamental question is that of jurisdiction, first of this court and then of the court from which the record comes, and such a question arising on the face of the record cannot be ignored.

By the acts of July 12, 1882, March 3, 1887 and August 13, 1888, national banks are, for purposes of the jurisdiction of the United States courts in actions by or against them, to be deemed citizens of the States in which they are located.

An action brought by a national banking association in a circuit court of the United States against citizens of another State, where no ground of jurisdiction appears in the record except diversity of citizenship, is not, owing to the mere fact that the plaintiff is organized under the national banking law, one arising under the laws of United States, and under the Judiciary Act of March 3, 1891, the judgment of the Circuit Court of Appeals is final and, therefore, not subject to review by this court.

THE facts are stated in the opinion.

Mr. *Rhea P. Cary* for plaintiff in error.

Mr. *William J. Orr* for defendant in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

Has this court authority to review the judgment of the Circuit Court of Appeals in this case?

This question arises upon the face of the record, and cannot be ignored; for, the rule is well established that, "on every writ of error or appeal, the first and fundamental question is that of jurisdiction, first of this court, and then of the court from which the record comes." *M. C. & L. M. Railway Co.* v. *Swan*, 111 U. S. 379, 382; *King Bridge Co.* v. *Otoe County*, 120 U. S. 225; *Martin* v. *Balt. & Ohio R. R. Co.*, 151 U. S. 673, 690; *Powers* v. *Chesapeake & Ohio Railway*, 169 U. S. 92, 98; *Great Southern Fire Proof Hotel Co.* v. *Jones*, 177 U. S. 449, 453.

The plaintiff in error, plaintiff below—the Continental National Bank, organized under the acts of Congress, and located for purposes of business at Memphis, Tennessee—alleged in its complaint that the Bank of Mammoth Springs, an Arkansas corporation, was indebted to it in a named sum, and it sought by this action to hold the defendant liable for the amount of such debt.

The action was based upon certain sections of the Statutes of Arkansas, c. 47, Sandels & Hill's Digest, as follows:

"§ 1337. The president and secretary of every corporation organized under the provisions of this act shall annually make

a certificate showing the condition of the affairs of such corporation, as nearly as the same can be ascertained, on the 1st day of January or of July next preceding the time of making such certificate, in the following particulars, viz: The amount of capital actually paid in; the cash value of its real estate; the cash value of its personal estate; the cash value of its credits; the amount of its debts; the names and number of shares of each stockholder; which certificate shall be deposited on or before the 15th day of February or of August with the county clerk of the county in which said corporation transacts its business, who shall record the same at length in a book to be kept by him for that purpose."

"§ 1346. The certificates required by sections 1334, 1337, 1343 and 1344, except certificates of transfers of stock, shall be made under oath or affirmation by the person subscribing the same; and if any person shall knowingly swear or affirm falsely as to any material facts, he shall be deemed guilty of perjury, and be punished accordingly.

"§ 1347. If the president and secretary of any such corporation shall neglect or refuse to comply with the provisions of section 1337, and to perform the duties required of them respectively, the persons so neglecting or refusing shall jointly and severally be liable to an action founded on this statute, for all debts of such corporation contracted during the period of any such neglect or refusal."

The complaint alleged that during the entire period of his term of office as President of the Bank of Mammoth Springs, that is, from June 9, 1891, to June 9, 1896, the defendant Buford "wholly neglected to comply with the provisions and perform the duties required of him by said sections 1337 and 1346, by making, swearing to and causing to be filed the statement or certificate required thereby."

The defendant demurred to the complaint on various grounds, one being that the plaintiff's action appeared to be barred by the statute of limitations of Arkansas. The Circuit Court sustained the demurrer, it being of opinion that the complaint did

not show any cause of action; also, that a suit for the debt in question was barred by the statute of limitations of Arkansas. The plaintiff declining to amend, the suit was dismissed. That judgment was affirmed by the Circuit Court of Appeals, 114 Fed. Rep. 290, and from that judgment the present writ of error was prosecuted.

By the very terms of the Judiciary Act of March 3, 1891, 26 Stat. 826, c. 517, the judgment of a Circuit Court of Appeals of the United States is final where the jurisdiction of the Circuit Court depends *entirely* upon the diverse citizenship of the parties. No ground whatever of jurisdiction in the Circuit Court appears in the complaint or elsewhere in the record, other than diversity in the citizenship of the parties, unless it can be said that by reason alone of the plaintiff bank having been organized under an act of Congress the suit is one arising under the laws of the United States. This, however, could not be said of the present suit, if regard be had to the acts of Congress defining and regulating the jurisdiction of the courts of the United States.

The Judiciary Act of March 3, 1875, for the first time, invested the Circuit Courts of the United States, without reference to the citizenship of the parties, with original jurisdiction of all suits of a civil nature at common law or in equity, where the matter in dispute exceeded a prescribed sum, *and* the suit was one "arising under the Constitution or laws of the United States." Referring to that statute, this court, in *Petri* v. *Commercial Bank*, 142 U. S. 644, 648, said: "Suits by or against national banks might therefore be brought or removed upon the ground of diverse citizenship, or of subject matter, since as they were created by Congress, and could acquire no right, make no contract and bring no suit, which was not authorized by a law of the United States, a suit by or against them was necessarily a suit arising under the laws of the United States. *Osborn* v. *Bank of the United States*, 9 Wheat. 738; *Leather Manufacturers' Bank* v. *Cooper*, 120 U. S. 778; *Pacific Railroad Removal Cases*, 115 U. S. 1. And of course national banks, as

well as state banks and individuals, might bring or remove suits otherwise arising under the Constitution, laws or treaties of the United States."

But, in respect of national bank associations, a radical change was introduced by subsequent acts of Congress.

By the act of July 12, 1882, c. 290, it was provided: "That the jurisdiction for suits hereafter brought by or against any association established under any law providing for national banking associations, except suits between them and the United States, or its officers and agents, shall be the same as, and not other than, the jurisdiction for suits by or against banks not organized under any law of the United States which do or might do banking business where such national banking associations may be doing business when such suits may be begun: And all laws and parts of laws of the United States inconsistent with this proviso be, and the same are hereby, repealed." 22 Stat. 162. Then came the Judiciary Act of March 3, 1887, corrected by the act of August 13, 1888, c. 866, and providing (§ 4): "That all national banking associations established under the laws of the United States shall, for the purposes of all actions by or against them, real, personal, or mixed, and all suits in equity, be deemed citizens of the States in which they are respectively located; and in such cases the Circuit and District Courts shall not have jurisdiction other than such as they would have in cases between individual citizens of the same State. The provisions of this section shall not be held to affect the jurisdiction of the courts of the United States in cases commenced by the United States or by direction of any officer thereof, or cases for winding up the affairs of any such bank." 25 Stat. 433.

The necessary effect of this legislation was to make national banks, for purposes of suing and being sued in the Circuit Courts of the United States, citizens of the States in which they were respectively located, and to withdraw from them the right to invoke the jurisdiction of the Circuit Courts of the United States simply upon the ground that they were created

by an exercised their powers under acts of Congress. No other purpose can be imputed to Congress than to effect that result. Of course, notwithstanding the acts of 1882 and 1888, there remained to a national bank, independently of its Federal origin, and as a citizen of the State in which it was located, the right to invoke the original jurisdiction of the Circuit Courts in any suit involving the required amount, and which, by reason of its subject matter, and not by reason simply of the Federal origin of the bank, was a suit arising under the Constitution or laws of the United States. *Petri* v. *Commercial Bank,* 142 U. S. 644, 648. Treating the plaintiff as a citizen of Tennessee, its right to sue the defendant in the Federal court, sitting in Arkansas, was beyond dispute. But, as already suggested, it did not assert any right, privilege or immunity that was dependent in any degree upon the Constitution or laws of the United States. As jurisdiction could not arise merely from the Federal origin of the plaintiff bank, and as no Federal question was involved in the suit, it must be taken that the only ground of jurisdiction in the Circuit Court was the diverse citizenship of the parties. If, apart from the fact that the plaintiff bank was a Federal corporation, the suit had been one arising under the Constitution or laws of the United States, it could not have been said that the jurisdiction of the Circuit Court depended entirely upon diverse citizenship of the parties. But as no Federal questions, upon which the suit depended, are presented by the record, the judgment of the Circuit Court of Appeals in this case was final, and, therefore, not subject to review by this court.

What we have said is, we think, required by the decision in *Ex parte Jones,* 164 U. S. 691. It appeared in that case that a judgment for money was recovered in the Circuit Court of the United States for the District of Massachusetts. Its amount was paid and subsequently deposited in a national bank. The bank having refused to pay over the money, suit was brought against it. The suit was dismissed by the Circuit Court and the judgment of dismissal was affirmed by the Circuit Court of

Appeals. The latter court having refused to allow an appeal upon the ground that an appeal was not given by the statute, proceedings by mandamus were instituted to compel it to do so. After referring to the clause in the Judiciary Act of 1888, declaring that national banking associations should be deemed citizens of the States in which they were respectively located, and that the Circuit and District Courts should not have jurisdiction, other than such as they would have in cases between individual citizens of the same States, the court said (p. 693): "In *Leather Mfrs. Bank* v. *Cooper*, 120 U. S. 778, it was held by this court that, under the act of 1882, which was similar in its terms [to that of 1888], an action against a national bank could not be removed to the Federal court, 'unless a similar suit could be entertained by the same court by or against a state bank in like situation with the national bank. Consequently, so long as the act of 1882 was in force, nothing in the way of jurisdiction could be claimed by a national bank because of the source of its incorporation. A national bank was by that statute placed before the law in this respect the same as a bank not organized under the laws of the United States.' . . . In this case the original bill averred the complainant to be a citizen of Pennsylvania and the defendant to be a national bank, duly established under the laws of the United States, having its place of business at Boston, and a citizen of the State of Massachusetts. As the bill was filed after the act of 1888 took effect, it must be deemed to be a suit dependent upon citizenship alone. . . . The petition for mandamus must be denied." Of course, that suit would not have been so regarded, and the petition would have been granted, if the Federal origin of the bank had been itself ground of jurisdiction, independently of the diverse citizenship of the parties.

For the reasons stated, the writ of error must be dismissed for want of jurisdiction in this court to review the final order of the Circuit Court of Appeals.

*Dismissed.*