479 F.2d 26
 Thos. F. BURNS, on behalf of himself and on behalf of all
other persons similarly situated, Appellant,
v.
AMERICAN NATIONAL BANK AND TRUST COMPANY, a National Banking
Association, Appellee.
Fred FISHER, on behalf of himself and on behalf of all other
persons similarly situated, Appellant,
v.
The FIRST NATIONAL BANK OF CHICAGO, CHICAGO, ILLINOIS, Appellee.
 Nos. 72-1135, 72-1507.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 12, 1973.
Decided April 20, 1973.
 
 Everett Meeker, Washington, Iowa, for appellant Fisher.
 J. Bradley Littlefield, Portland, Or., for appellant Burns.
 Before MATTHES, Chief Judge, and MEHAFFY, GIBSON, LAY, HEANEY, BRIGHT, ROSS and STEPHENSON, Circuit Judges.
 ROSS, Circuit Judge.
 
 
 1
 These cases present identical jurisdictional questions under provisions of the National Bank Act. Both Burns and Fisher brought an action in federal court against a national bank seeking to recover usury penalties for themselves and for other members of their class, under 12 U.S.C. Secs. 85 and 86. In both cases the defendant bank filed a motion to dismiss on the ground that the court lacked subject matter jurisdiction. These motions were sustained and the cases were dismissed by the trial courts on the ground that under 28 U.S.C. Sec. 1348 federal courts do not have jurisdiction over actions brought against national banks by individuals unless diversity or a federal question, as well as the jurisdictional amount, is pleaded under 28 U.S.C. Sec. 1332 or Sec. 1331.
 
 
 2
 Both of these cases were originally heard by panels of this Court. In Burns, which was submitted October 19, 1972, and decided December 27, 1972, a divided panel affirmed the trial court's determination that it lacked subject matter jurisdiction under 28 U.S.C. Sec. 1348. On January 9, 1973, a different panel of this Court heard the Fisher case, and on January 15, 1973, orders were entered in both cases granting a combined en banc hearing.
 
 
 3
 We hold that jurisdiction may be founded on 28 U.S.C. Sec. 1337, and reverse and remand for further proceedings.
 
 Section 1348 provides as follows:
 
 4
 "The district courts shall have original jurisdiction of any civil action commenced by the United States, or by direction of any officer thereof, against any national banking association, any civil action to wind up the affairs of any such association, and any action by a banking association established in the district for which the court is held, under chapter 2 of Title 12, to enjoin the Comptroller of the Currency, or any receiver acting under his direction, as provided by such chapter.
 
 
 5
 "All national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located."
 
 
 6
 The principal question here is the proper interpretation of the final sentence of this section. The banks claim that this shows an intention of Congress to eliminate federal jurisdiction over suits against national banks except under 28 U.S.C. Secs. 1331 or 1332; and appellants claim that this section was intended only to eliminate the right of national banks to claim original or removal jurisdiction solely on the basis of being a nationally chartered corporation. We adopt the latter view.
 
 
 7
 Originally Congress provided that national banks could only be sued in federal court. However, Congress later adopted Sec. 4 of the Act of July 12, 1882, which provided:
 
 
 8
 " '[T]he jurisdiction for suits hereafter brought by or against any association . . . shall be the same as, and not other than, the jurisdiction for suits by or against banks not organized under any law of the United States . . . . And all laws and parts of laws of the United States inconsistent with this proviso be, and the same are hereby, repealed.' " Mercantile National Bank v. Langdeau, 371 U.S. 555, 565, 83 S.Ct. 520, 526, 9 L.Ed.2d 523 (1963).
 
 
 9
 Section 1348 was derived from the Act of March 3, 1887, which reenacted Sec. 4 of the 1882 Act in modified form. As the Supreme Court stated in Mercantile National Bank v. Langdeau, supra, 371 U.S. at 565-566, 83 S.Ct. at 526,
 
 
 10
 "[Sec.] 4 of the 1882 Act and the 1887 Act were designed to overcome the effect of Secs. 563 and 629 Rev.Stat. which allowed national banks to sue and be sued in federal district and circuit courts solely because they were national banks, without regard to diversity, amount in controversy or the existence of a federal question in the usual sense. Section 4 apparently sought to limit, with exceptions, the access of national banks to, and their suability in, the federal courts to the same extent to which non-national banks are so limited.
 
 
 11
 "Decisions of this Court have recognized that Sec. 4 purported to deal with no more than matters of federal jurisdiction. As we observed in Continental National Bank v. Buford, 191 U.S. 119, 123-124, 24 S.Ct. 54, 48 L.Ed. 119:
 
 
 12
 'The necessary effect of this legislation was to make national banks . . . citizens of the states in which they were respectively located, and to withdraw from them the right to invoke the jurisdiction of the circuit courts of the United States simply on the ground that they were created by, and exercised their powers under acts of Congress. No other purpose can be imputed to Congress than to effect that result.' " (Footnotes omitted.)
 
 
 13
 In Herrmann v. Edwards, 238 U.S. 107, 35 S.Ct. 839, 59 L.Ed. 1224 (1915), the Supreme Court held that there was no federal jurisdiction in a suit against directors of a national bank for wrongdoing and breach of trust. But the Court made clear that there was nothing alleged in the complaint upon which to base jurisdiction except the allegation that the defendant was a national bank. The Supreme Court analyzed the predecessor statute to Sec. 1348 as follows:
 
 
 14
 "Under the provisions of the Act of 1882 long prior to their reenactment in 1888, it had been conclusively established that because a corporation was a national bank, created under an act of Congress, gave it no greater right to remove a case than if it had been organized under a state law. Leather Manufacturers' Bank v. Cooper, 120 U.S. 778, 7 S.Ct. 777, 30 L.Ed. 816." Id. at 111, 35 S.Ct. at 839.
 
 
 15
 At first glance Herrman, Buford, and Cooper do seem to stand for the proposition that absent jurisdiction under Secs. 1331, 1332 or 1348, there can be no jurisdiction. However, it should be noted that in those cases jurisdiction was claimed simply on the basis of the fact that a national bank was involved. Moreover, jurisdiction under an act regulating commerce, 28 U.S.C. Sec. 1337, was not even provided for until 1911, subsequent to all of these decisions except Herrmann. Therefore, the Supreme Court did not have the advantage of this additional jurisdictional provision when it decided those cases.
 
 
 16
 In Cupo v. Community National Bank & Trust Co., 438 F.2d 108, 110 (2nd Cir. 1971), the Second Circuit disposed of the argument that 28 U.S.C. Sec. 1348 precludes jurisdiction in actions under another section of the National Bank Act, 12 U.S.C. Sec. 61, in these words:
 
 
 17
 "Defendants urge this court to reject the holding in Murphy v. Colonial Federal Savings and Loan Association, 388 F.2d 609, contending that that holding is in direct conflict with the Congressional policy behind the enactment of 28 U.S.C. Secs. 1348 and 1349. We reject this contention. It appears reasonably clear that section 1348 was designed to grant federal jurisdiction in certain limited situations involving winding up of the affairs of the national banks and to establish citizenship for diversity purposes in cases where federal court jurisdiction is based on diversity of citizenship. Cf. Austin v. Altman, 332 F.2d 273, 276 (2d Cir. 1964). The last sentence of the provision clearly indicates that Congress contemplated other common law actions involving national banks being brought in the federal courts only where diversity of citizenship exists, but in no way negates federal jurisdiction under grants such as section 1337. See also, 12 U.S.C. Sec. 94, regulating venue. Thus section 1348 cannot be read as implying that only the actions enumerated in that section can be brought in federal court. Since the claim in this case establishes the existence of an independent federal question on the basis of the alleged violation of 12 U.S.C. Sec. 61, section 1348 is no bar." (Footnotes omitted.)
 
 
 18
 In our opinion, Sec. 1348, like its predecessor statutes, was intended to eliminate the right of national banks to claim original or removal jurisdiction solely on the basis of being a nationally chartered corporation, and was not intended to eliminate jurisdiction in all suits involving national banks except those actions specifically permitted in the first paragraph thereof.
 
 
 19
 The district court in Burns held that jurisdiction in cases involving national banks may be founded in Secs. 1331 and 1332 as well as Sec. 1348 where the prerequisites of those sections are met. It is inconsistent, however, to recognize jurisdiction where there is a federal question, as contemplated in Sec. 1331, yet deny it where there is a more specific federal question arising from the commerce clause. The sole question thus becomes whether or not the sections of the National Bank Act relating to usury, 12 U. S.C. Secs. 85 and 86, properly come within the classification of an "Act of Congress regulating commerce." 28 U.S.C. Sec. 1337.[1]
 
 
 20
 Section 85 limits the amount of interest which can lawfully be charged by a national bank to the interest allowed by the state wherein the bank is located. To this extent, it places national banks upon the same competitive footing as state banks having their place of business within the same state. But Sec. 86 provides that in cases where usurious interest is charged, recovery may be had against a national bank in double the amount of the interest paid, and it sets a two-year period within which the action for recovery must be commenced. Congress has thus imposed upon national banks a penalty provision that may be different from those imposed by the individual states on state banks in two significant ways. The enforcement of that penalty provision is the basis for the action in those cases.
 
 
 21
 It seems almost elementary that Congress regulates national banks primarily under the commerce clause, and that the National Bank Act, including 12 U.S.C. Secs. 85 and 86, is an Act regulating commerce for purposes of Sec. 1337.
 
 
 22
 "It is true that federal regulation of finance is not grounded in the commerce power alone. As Chief Justice Hughes explained in Norman v. B. & O. R.R., 294 U.S. 240, 303, 55 S.Ct. 407, 414, 79 L.Ed. 885 (1935):
 
 
 23
 The broad and comprehensive national authority over the subjects of revenue, finance and currency is derived from the aggregate of the powers granted to the Congress, embracing the powers to lay and collect taxes, to borrow money, to regulate commerce with foreign nations and among the several states, to coin money, regulate the value thereof, and of foreign coin, and fix the standards of weights and measures, and the added express power 'to make all laws which shall be necessary and proper for carrying into execution' the other enumerated powers.
 
 
 24
 See also McCulloch v. State of Maryland, 17 U.S. (4 Wheat.) 316, 406, 4 L.Ed. 579 (1819). But to found jurisdiction upon Sec. 1337, it is not requisite that the commerce clause be the exclusive source of Federal power; it suffices that it be a significant one." Murphy v. Colonial Federal Savings and Loan Association, 388 F.2d 609, 615 (2nd Cir. 1967).
 
 
 25
 See also, Partain v. First National Bank of Montgomery, 467 F.2d 167, 172 (5th Cir. 1972); Cupo v. Community National Bank & Trust Co., supra, 438 F.2d at 110.
 
 
 26
 The Fifth Circuit has joined the Second Circuit in holding that 28 U.S.C. Sec. 1337 gives federal courts jurisdiction in suits brough under specific provisions of the National Bank Act. In Partain v. First National Bank of Montgomery, supra, 467 F.2d at 167, the plaintiff brought suit under 12 U.S.C. Secs. 85 and 86 (as did both Burns and Fisher) and the Fifth Circuit held that jurisdiction was established under Sec. 1337.
 
 
 27
 We hold therefore that the district courts had jurisdiction in each of these cases under Sec. 1337. In view of this holding, we do not reach the question of whether or not there is also jurisdiction under 28 U.S.C. Sec. 1355 which gives the districts courts original jurisdiction of any action for recovery of a fine or penalty incurred under any Act of Congress. Neither do we reach the question of whether or not these suits were properly brought as class actions.
 
 
 28
 Fisher originally failed to allege jurisdiction under 28 U.S.C. Sec. 1337. After the trial court sustained defendant's motion to dismiss, Fisher moved to amend his complaint to include such an allegation. The trial court declined to permit the amendment stating as follows:
 
 
 29
 "This finding does not rest upon the court's general discretion to disallow amendments, but upon the court's conclusion that the amended complaint would be subject to dismissal as not stating a cause of action upon which relief could be granted. Authorities cited by defendant hold there is no need for the court to indulge in 'futile gestures' under such circumstances."
 
 
 30
 (In its original ruling the trial court considered and rejected the argument that jurisdiction was established under 28 U.S.C. Sec. 1337.) Upon remand the trial court is directed to permit the filing of the "Second Amendment to Complaint" filed in the district court on May 19, 1972.
 
 
 31
 Both cases are reversed and remanded for further proceedings consistent with the views expressed in this opinion.
 
 
 32
 BRIGHT, Circuit Judge, with whom MEHAFFY, Circuit Judge, joins (dissenting).
 
 
 33
 We dissent. The jurisdictional question is whether federal courts should entertain federal usury claims for less than $10,000 against national banks in nondiversity suits. In our view, 28 U. S.C. Sec. 1348 precludes federal jurisdiction under 28 U.S.C. Sec. 1337 in these suits.[1]
 
 
 34
 Section 1348 contains two parts; a first paragraph granting federal jurisdiction in certain specific controversies relating to national banks (winding up affairs and actions to enjoin Comptroller of the Currency), and a second paragraph restrictive of other actions. This second paragraph provides:
 
 
 35
 All national banking associations shall for the purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located.
 
 
 36
 The majority have agreed with appellants' argument that the present actions may be brought in federal court pursuant to 28 U.S.C. Sec. 1337 as suits arising under an Act of Congress regulating commerce since the National Bank Act constitutes a regulation of national banks under the commerce power. The majority conclude that the restrictive jurisdictional effect of Sec. 1348 " was intended to eliminate the right of national banks to claim original or removal jurisdiction solely on the basis of being a nationally chartered corporation, and was not intended to eliminate jurisdiction in all suits involving national banks except those actions specifically permitted in the first paragraph [of Sec. 1348]." Majority opinion, supra, at 27. While we agree with the second aspect of this conclusion, we do not believe that the jurisdictional impact of Sec. 1348 was intended to be as limited as the majority suggest.
 
 
 37
 As we understand the position of the appellee-banks, they would concede federal jurisdiction in suits in which national banks are parties where, under similar circumstances, an action in federal court might lie against a state chartered bank. These suits would include actions involving federal questions or diversity of citizenship and for an amount in excess of $10,000 under 28 U.S.C. Secs. 1331 and 1332.
 
 
 38
 Additionally, jurisdiction would certainly lie against either state or national banks pursuant to Sec. 1337 where the gist of the action alleged monopolistic practices in violation of the Sherman Act or the Clayton Act, which are acts of Congress "* * * protecting trade and commerce against restraints and monopolies." Moreover, other federal statutes which apply equally to business operations of both state and federal banks afford litigants the right to sue these institutions in federal court. Examples include provisions of the Fair Labor Standards Act, 29 U.S.C. Sec. 216(b), and of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e-5(f).[2]
 
 
 39
 The Supreme Court, in Mercantile National Bank v. Langdeau, 371 U.S. 555, 559-560, 565, 83 S.Ct. 520, 9 L.Ed.2d 523 (1963), noted that initially national banks probably could be sued only in federal courts. But in 1864 Congress authorized concurrent jurisdiction in certain state courts. Concurrent jurisdiction existed until the enactment of Sec. 4 of the Act of July 12, 1882, ch. 290, 22 Stat. 162, the predecessor to Sec. 1348, which enactment restricted the federal jurisdiction over national banks. A proviso to Sec. 4 of this Act read:
 
 
 40
 "[T]he jurisdiction for suits hereafter brought by or against any association . . . shall be the same as, and not other than, the jurisdiction for suits by or against banks not organized under any law of the United States . . . And all laws and parts of laws of the United States inconsistent with this proviso be, and the same are hereby, repealed." [Mercantile National Bank, supra, 371 U.S. at 565, 83 S.Ct. at 526 (footnote omitted).]
 
 The Court observed:
 
 41
 Section 4 apparently sought to limit, with exceptions, the access of national banks to, and their suability in, the federal courts to the same extent to which non-national banks are so limited. [Id. at 566, 83 S.Ct. at 526 (footnote omitted).]
 
 
 42
 Elaborating on the legislative intent underlying Sec. 4, the Court stated:
 
 
 43
 The proviso to Sec. 4 of the 1882 Act first appeared as an amendment offered on the floor of the House by Representative Hammond, pursuant to the order of the House fixing the assignment of the bill H.R. 4167 as a special order. * * * Mr. Hammond succinctly stated the purpose of his amendment as follows: "My amendment, therefore, declares that the jurisdictional limits for and as to a national bank shall be the same as they would be in regard to a State bank actually doing or which might be doing business by its side; that they shall be one and the same." * * * Mr. Robinson then asked, "As I understand the gentleman's proposed amendment, it is simply to this effect, that a national bank doing business within a certain State shall be subject for all purposes of jurisdiction to precisely the same regulations to which a State bank, if organized there, would be subject." Mr. Hammond replied, "That is all." * * *. [Id. n.22 (citations omitted).]
 
 
 44
 Since the passage of this 1882 Act, the Supreme Court has consistently denied access to federal courts in suits against national banks not coming within the jurisdictional requirements of 28 U.S.C. Secs. 1331, 1332, or 1348, and their predecessor provisions. See, e. g., Leather Manufacturers' Bank v. Cooper, 120 U.S. 778, 7 S.Ct. 777, 30 L.Ed. 816 (1887); Whittemore v. Amoskeag National Bank, 134 U.S. 527, 10 S.Ct. 592, 33 L.Ed. 1002 (1890); Herrmann v. Edwards, 238 U.S. 107, 35 S.Ct. 839, 59 L. Ed. 1224 (1915). Cf Continental National Bank v. Buford, 191 U.S. 119, 24 S.Ct. 54, 48 L.Ed. 119 (1903).
 
 
 45
 In Leather Manufacturers', the Supreme Court construed the effect of Sec. 4 of the Act of July 12, 1882, as follows:
 
 
 46
 [The Act] provided in clear and unmistakable terms that the courts of the United States should not have jurisdiction of such suits thereafter brought, save in a few classes of cases, unless they would have jurisdiction under like circumstances of suits by or against a state bank doing business in the same state with the national bank. The provision is not that no such suit shall be brought by or against such a national bank in a federal court, but that a federal court shall not have jurisdiction. This clearly implies that such a suit can neither be brought nor removed there; for jurisdiction of such suits has been taken away, unless a similar suit could be entertained by the same court by or against a state bank in like situation with the national bank. Consequently, so long as the act of 1882 was in force, nothing in the way of jurisdiction could be claimed by a national bank because of the source of its incorporation. A national bank was by that statute placed before the law in this respect the same as a bank not organized under the laws of the United States. [120 U.S. at 781, 7 S.Ct. at 778.]
 
 
 47
 In Whittemore, plaintiff had sought to hinge federal jurisdiction on provisions of the National Bank Act which authorized criminal prosecution and a civil action by the Comptroller of the Currency for forfeiture of a banking franchise. The circuit court dismissed on nonjurisdictional grounds. The Supreme Court reversed and directed that the case be dismissed for lack of jurisdiction.
 
 
 48
 In a subsequent comment on its Whittemore decision, the Court in Herrmann noted:
 
 
 49
 * * * [T]his court concluding that the Act of 1882 excluded jurisdiction as a Federal court, the action of the court below in dismissing for want of compliance with the equity rule was reversed and the case remanded with directions to dismiss for want of jurisdiction as a Federal court. Of course this conclusion involved deciding that in the absence of a Federal controversy concerning the interpretation of some provision of the national bank act raising what might be considered by analogy a Federal question in the sense of Sec. 709, Rev.Stat., a mere assertion of liability on the part of directors for wrongs for which they might be responsible at common law, afforded no basis for jurisdiction. Indeed, that this conception was the one upon which the decision was rested is shown by the fact that in the course of the opinion it was pointed out that neither the provisions of Sec. 5209, Rev.Stat., providing for criminal punishment of directors of national banks in certain cases, nor Sec. 5239, Rev.Stat., giving certain powers to the Comptroller of the Currency in certain instances, were involved in the cause of action so as to give rise to a Federal question upon which the jurisdiction could be based. [238 U.S. 112-113, 35 S.Ct. 840.]
 
 
 50
 In short, the congressional history and the interpretation given this history by the Supreme Court furnish persuasive authority that Congress sought to restrict federal court jurisdiction in suits by or against national banks to the same extent that state banks or parties suing state banks are denied jurisdiction.
 
 
 51
 Here, limitation of the allowable rate of interest which a bank many charge represents a basic regulation common to both state and federal banking laws. The federal usury law is grounded in state regulation, for Sec. 85 of the National Bank Act permits a national bank to charge interest "at the rate allowed by the laws of the State * * *." Access to federal courts would be denied appellants if they had brought similar actions against state banks under state law. To permit appellants access to federal court in the instant cases violates the strong congressional policy underlying Sec. 1348 that state and national banks be treated alike under similar circumstances for jurisdictional purposes. Thus, we would reject Sec. 1337 as a jurisdictional basis for these actions.
 
 
 52
 In so concluding, we note that the jurisdictional significance of Sec. 1337 has been greatly expanded since its enactment in 1911, Murphy v. Colonial Federal Savings and Loan Ass'n, 388 F.2d 609, 614-615 (2d Cir. 1967). The jurisdictionally restrictive provisions culminating in Sec. 1348, however, were enacted and subsequently interpreted by the Supreme Court against the backdrop of then existing provisions of the National Bank Act including the usury sections derived from the Act of June 3, 1864, ch. 106, Sec. 30, 13 Stat. 108. Under these circumstances, we think it extremely doubtful that Congress in later enacting Sec. 1337 intended a modification of the existing specific jurisdictional provisions governing national banks.
 
 
 53
 Absent some direction from Congress or an additional pronouncement from the Supreme Court, and in light of the ever mounting caseloads of the federal courts, we are reluctant to extend our jurisdiction to controversies involving national banks, which appear to have been generally and satisfactorily handled by state courts for over 90 years.
 
 
 
 [1]
 Section 1337 provides as follows:
 "The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."
 
 
 [1]
 The majority holds only that Sec. 1348 is no bar to these suits involving national banks being brought in federal court under 28 U.S.C. Sec. 1337, a special jurisdictional statute extending the purview of the federal courts to cases arising under an act of Congress regulating commerce. We address our dissent to this limited holding
 
 
 [2]
 In Continental National Bank v. Buford, 191 U.S. 119, 124, 24 S.Ct. 54, 56, 48 L.Ed. 119 (1903), the Supreme Court recognized the right to invoke jurisdiction under existing jurisdictional statutes of general application despite the enactment of predecessor provisions to Sec. 1348. The Court said:
 Of course, notwithstanding the acts of 1882 and 1888, there remained to a national bank, independently of its Federal origin, and as a citizen of the State in which it was located, the right to invoke the original jurisdiction of the circuit courts in any suit involving the required amount, and which, by reason of its subject-matter, and not by reason simply of the Federal origin of the bank, was a suit arising under the Constitution or laws of the United States.