UNITED STATES of America, on Behalf of the FEDERAL TRADE COMMISSION, Plaintiff,

v.

LARKIN, HOFFMAN, DALY & LINDGREN, LTD.; National City Bank of Minneapolis, as National Banking Association and as Trustee for the William J. Ulrich Capital Accumulation Trusts for Benefit of Angela M., Beth M., and Bridget M. Ulrich, Defendants.

Civ. No. 3–92–789.

United States District Court, D. Minnesota, Third Division.

July 19, 1993.

Patricia R Cangemi, U.S. Atty. Office, Minneapolis, MN, David C. Fix, Heather Hippsley, David P. Frankel, James Reilly Dolan, Darren A. Bowie, F.T.C., Washington, DC, for U.S., on behalf of F.T.C.

Michael Berens, Kelly & Berens, Minneapolis, MN, for Larkin, Hoffman, Daly & Lindgren, Ltd.

Allen I. Saeks, Leonard, Street & Deinard, Minneapolis, MN, for Nat. City Bank of Minneapolis, as Nat. Banking Ass'n and as Trustee for the William J. Ulrich Capital Accumulation Trusts FBO Angela M., Beth M., and Bridget M. Ulrich.

## MEMORANDUM AND ORDER

MAGNUSON, District Judge.

This matter is before the court upon defendant National City Bank's motion to dismiss for lack of standing and lack of subject matter jurisdiction and on defendant Larkin, Hoffman, Daly & Lindgren's (Larkin Hoffman) motion to dismiss for lack of subject matter jurisdiction and lack of standing. For the following reasons, the court denies National City Bank's motion and grants Larkin Hoffman's motion in part and denies Larkin Hoffman's motion in part.

## BACKGROUND [1]

The factual background of this suit is complex and confused. This brief description

---

1. This brief recitation is gleaned primarily from the plaintiff's complaint and memoranda. The

attempts to set forth a bare outline of the factual and procedural history of this matter, as best the court can discern it at this stage of the lawsuit.

In 1989, the Federal Trade Commission (FTC) obtained an $11.2 million judgment for consumer redress in this court against William J. Ulrich (Ulrich) and his corporations for engaging in fraudulent sale of rare coins in violation of Section 5 of the FTC Act, 15 U.S.C. § 45. *See FTC v. Security Rare Coin & Bullion Corp.*, 1989–2 Trade Cases 68,807, 1989 WL 134002 (D.Minn.1989), *aff'd*, 931 F.2d 1312 (8th Cir.1991). Previously, in 1986, 1987 and 1988, Ulrich transferred numerous rare coins by gift to three trusts, described as the William J. Ulrich Capital Accumulation Trusts (WJU Trusts). Defendant National City Bank (NCB or Bank) was trustee of the WJU Trusts at the time of the transfers and has remained trustee continuously from the time of the transfers to the present.

The government alleges that the gifts to the trusts were fraudulent transfers made by Ulrich in an attempt to put assets beyond the reach of the FTC. In July 1991, pursuant to its judgment against Ulrich, the FTC obtained a writ of execution and levy against the assets of the trusts and subsequently seized the assets remaining in the trusts at that time.

The law firm of Larkin, Hoffman, Daly & Lindgren (Larkin Hoffman) allegedly assisted Ulrich in making fraudulent transfers to the WJU trusts. In 1986 and 1987, Larkin Hoffman attorneys allegedly backdated various gift documents, in order to keep them beyond the reach of the FTC. The government further alleges that in 1988, during discovery in *Security Rare Coin*, Larkin Hoffman attorneys lied to government attorneys in order to perpetuate a cover-up of backdating and defrauding of the FTC.

From June 1989 until April 1991, Ulrich allegedly engaged in systematic liquidation, at well below market rates, of the coins "gifted" to the WJU trusts in 1986, 1987 and 1988. According to the government, NCB knowingly furnished substantial assistance to

Ulrich in this liquidation, in violation of its fiduciary duties as trustee. As a result of the liquidation, Ulrich generated substantial proceeds for himself while depleting the corpus of the WJU trusts, resulting in significant losses to the trusts. The government alleges that the loss incurred by the trusts as a result of this scheme was effectively borne by the FTC, due to the FTC's subsequent attachment of the trust assets in partial satisfaction of its judgment against Ulrich.

The government also alleges that NCB substantially assisted Ulrich in his scheme to defraud the government by "acting in reckless disregard of standard banking practices" in its administration of the trusts. The government further alleges that NCB improperly concealed information from the FTC in order to assist Ulrich in illegally keeping assets beyond the reach of the FTC.

The United States filed this suit against NCB and Larkin Hoffman in late 1992, seeking damages under several different theories for the defendants' alleged activities depriving the FTC of funds to which it was entitled under the *Security Rare Coin* judgment. Both NCB and Larkin Hoffman now move for dismissal of the entire suit, contending that this court lacks jurisdiction to hear the suit and that the plaintiff has failed to state a claim on which relief can be granted. *See* Fed.R.Civ.P. 12(b). Further facts and allegations are discussed below as they become relevant.

## DISCUSSION

■■■■ For purposes of the defendant's motion to dismiss, the court takes all facts alleged in the plaintiff's complaint as true. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir.1990). Further, the court must construe the allegations in the complaint and reasonable inferences arising from the complaint favorably to the plaintiff. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir.1986). A motion to dismiss will be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Morton v. Becker*, 793 F.2d at 187; *see Conley v. Gibson*, 355 U.S. 41, 45–

court does not necessarily find any of the facts stated to be true, but for purposes of these mo-

tions to dismiss, it assumes them to be accurate. *See* Fed.R.Civ.P. 12(b).

46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). The court applies those standards in the following discussion.

## I. NATIONAL CITY BANK

### A. *Federal Court Jurisdiction* [2]

■ Defendant National City Bank contends this court has no jurisdiction to hear this suit because there is no statute providing federal jurisdiction for this type of suit. The court disagrees and finds several bases for federal jurisdiction over this suit brought by the United States. Because this action is brought by the United States, the court declines to consider the defendant's arguments regarding the power of this court to hear actions brought by the FTC against a national bank.

### 1. 28 U.S.C. § 1331

■ Federal courts have general "federal question jurisdiction" over civil actions "arising under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331. In order to invoke federal jurisdiction under Section 1331, a plaintiff's claim must be based on some federal law independent of that statute. *See Merrell Dow Pharmaceuticals v. Thompson*, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). In the present case, the Federal Debt Collection Procedure Act, 28 U.S.C. §§ 3001–3308, provides the requisite statutory basis for federal jurisdiction under Section 1331.

The Federal Debt Collection Procedure Act (FDCPA) applies to debts and judgments owed to the United States. 28 U.S.C. § 3001. The FDCPA defines "debt" to include, *inter alia*, "an amount owing to the United States on account of . . . restitution or other source of indebtedness to the United States." 28 U.S.C. § 3002(3)(B). Further,

the term United States includes agencies, departments and commissions of the United States. 28 U.S.C. § 3002(15)(B). Under the clear terms of the Act, the *Security Rare Coin* judgment is both a "judgment" and a "debt." Because that "debt" is owed to the United States Federal Trade *Commission*, it is a debt owed to the United States within the meaning of the FDCPA. Therefore, this action is governed by the FDCPA.

Contrary to NCB's contention, the FDCPA confers substantive rights and remedies on the United States; the government seeks to enforce those rights in this suit.[3] Pursuant to the fraudulent transfer provisions of the FDCPA, the United States seeks to have all above-described transfers affecting the debt owed to the United States declared void. *See* 28 U.S.C. §§ 3301–3308. The government also seeks to hold NCB, as transferee, liable for the monetary equivalent of the transfers because it alleges that NCB is not a good-faith transferee that took for value. *Id.*

■ NCB contends that the government's sole recourse in its fraudulent transfer claims is against the trusts themselves and not against the trustee NCB. This contention does not withstand scrutiny. Initially, the party with the capacity to defend a suit on behalf of a trust is the trustee. *See In re Admiral Merchants Motor Freight, Inc.*, 11 B.R. 63 (Bankr.D.Minn.1981). As the party with legal title to the corpus of a trust, the trustee is the proper party to be sued as transferee in fraudulent transfer claims. *See, e.g., Seitter v. Schoenfeld*, 678 F.Supp. 831, 833 (D.Kan.1988). As trustee of the WJU trusts, NCB is the appropriate defendant in a suit seeking to remedy fraud-

---

2. As the parties' memoranda amply demonstrate, questions of jurisdiction and standing are intertwined in this matter. Though the court focuses on questions of statutory federal court jurisdiction in this section, some discussion of standing is both necessary and inevitable.

3. Though this point was not discussed by the parties, the court believes the FDCPA also provides *standing* for the United States to bring this suit. The Act highlights the interest of the United States in collecting federal agency debts and

judgments and provides that certain remedies shall be available to the "United States." 28 U.S.C. § 3306. The Act further states that the United States includes any "agency, department, commission, board or other entity of the United States." 28 U.S.C. § 3002(15). That definition is sufficiently broad to encompass the United States and its lawyers, the U.S. Attorney General and Department of Justice, which bring this suit on behalf of the FTC.

ulent transfers to those trusts.[4]

### 2. 28 U.S.C. § 1345

■ This court also has jurisdiction to hear this suit under 28 U.S.C. § 1345, which provides:

> Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress.

The plain language of Section 1345 makes it clear that federal district courts have jurisdiction over all claims brought by the United States—unless Congress provides otherwise. No party has cited any Act of Congress divesting this court of jurisdiction over the claims asserted here. Therefore, this court has jurisdiction under Section 1345 to hear the United States' claims.

The United States Supreme Court adopted this construction of Section 1345 in *FSLIC v. Ticktin*, 490 U.S. 82, 109 S.Ct. 1626, 104 L.Ed.2d 73 (1989). Deciding whether Section 1345 grants jurisdiction to federal district courts over claims brought by a federal savings-and-loan regulatory agency (FSLIC), the court found three conditions on the exercise of federal court jurisdiction pursuant to that section: (1) the litigation must be civil litigation commenced by the federal party; (2) an agency seeking to invoke the statute must be expressly authorized to sue; and (3) jurisdiction is subject to exceptions otherwise provided by Congress. *Id.* at 85, 109 S.Ct. at 1627.

Because the United States itself, and not a federal agency, is a party in the present litigation, the second of these requirements is inapplicable. Thus, under *Ticktin*, the only prerequisites to federal jurisdiction are that the United States commence the civil suit and that Congress has not provided otherwise. The United States is the plaintiff in this suit and it is a civil suit. As discussed previously, the court finds no statute withholding federal jurisdiction over this sort of suit. Because the two applicable prerequisites for federal jurisdiction over this matter are satisfied, the court has jurisdiction to hear the suit pursuant to Section 1345.

■ NCB's objections to this straightforward application of Section 1345 are unavailing. The defendant first seems to suggest that the United States must be expressly authorized by a second independent statute to bring suit before this court may exercise jurisdiction under Section 1345. This claim must be based on a misreading of the statute. Section 1345 plainly provides for jurisdiction over civil actions brought by the United States itself *or* by a federal agency, if that agency is expressly authorized to sue. The separate clauses in the statute and the use of the disjunctive "or" to divide those clauses makes it clear that the express statutory authorization proviso applies only to suits brought by agencies or officers of the United States. *See* 28 U.S.C. § 1345.

■ The defendant also contends that because the United States is not suing to vindicate a specific statutory right, it must have an interest in the dispute sufficient to provide standing. This argument fails on at least two grounds. First, as discussed in the preceding section, the United States *is* suing to vindicate specific statutory rights, namely those provided in the FDCPA. Second, as discussed more fully *infra* at I.B., the United States has sufficient interest in this matter—including interest in the collection of debts owed to federal agencies and the enforcement of judgments obtained by those agencies—to provide standing for the United States to sue.

### 3. 28 U.S.C. § 1348

■ The United States also asks this court to exercise jurisdiction over this action

---

4. Even though the FTC exhausted the remaining corpus of the trusts when it seized the assets of the trusts in partial satisfaction of its judgment, the government still may seek to recover the difference between the value of trust assets at the time of the alleged fraudulent transfer and the value at the time it seized the assets pursuant to the 1991 writ of execution. The FDCPA provides that the United States may recover the value of fraudulently transferred assets *at the time of the transfer*. 28 U.S.C. §§ 3307(b) & (c). Thus, contrary to NCB's contention, there is a live "case or controversy" with respect to the United States' FDCPA claims.

against defendant NCB under 28 U.S.C. § 1348, which provides in pertinent part:

The district courts shall have original jurisdiction of *any civil action commenced by the United States,* or by direction of any officer thereof, *against any national banking association* ... All national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located.

(emphasis added). Similar to Section 1345, the language of the first clause of Section 1348 clearly provides for federal jurisdiction over any civil action which is (i) brought by the United States and (ii) against a national banking association. Because both conditions are satisfied here, this court appears to have jurisdiction over this suit under Section 1348, absent a compelling contrary argument.

Citing *Burns v. American National Bank & Trust Co.,* 479 F.2d 26 (8th Cir.1973), the Bank argues that the United States must plead some other federal cause of action in conjunction with Section 1348 in order to properly invoke federal jurisdiction. However, *Burns* and the other cases cited by NCB do not support this proposition.[5] Significantly, none of the cited cases involved the United States as plaintiff. Therefore, the first clause of Section 1348, which the court finds determinative of the question of federal jurisdiction under that section, did not apply in those cases.

In addition, the discussion in *Burns* centers around the question of whether the final sentence of Section 1348 limits federal jurisdiction over national banks to suits brought under 28 U.S.C. § 1331 or § 1332. The *Burns* court concluded that the intent of the final sentence was "only to eliminate the right of national banks to claim original or removal jurisdiction *solely* on the basis of

being a nationally chartered corporation." *Burns,* 479 F.2d at 27. The question of a bank's ability to invoke federal jurisdiction is not raised in this matter. The court concludes that the cases cited by NCB are inapposite to the issues in the case at bar.

### 4. Federal Common Law Claims

■ In further support of this court's jurisdiction, the United States contends that its federal common law claims are sufficient to support federal jurisdiction. The court agrees that valid federal common law claims would be sufficient to invoke this court's jurisdiction under 28 U.S.C. §§ 1331, 1345 & 1348. *See e.g., Illinois v. City of Milwaukee,* 406 U.S. 91, 100, 92 S.Ct. 1385, 1391, 31 L.Ed.2d 712 (1972). However, Supreme Court and Eighth Circuit cases counsel extreme caution in the creation of federal common law. *See Texas Indus., Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 638–42, 101 S.Ct. 2061, 2065–67, 68 L.Ed.2d 500 (1981); *Chutich v. Touche Ross & Co.,* 960 F.2d 721, 724 (8th Cir.1992). Federal courts may formulate federal common only in two limited situations: "[W]hen a federal rule of decision is necessary to protect uniquely federal interests, and [when] Congress has given the courts the power to develop substantive law." *Chutich,* 960 F.2d at 724 (citations omitted).

The court finds little evidence that Congress has expressly granted power to the federal courts to develop substantive law in this area. Further, after careful review of the cases cited by the parties, the court determines that independent federal common law is not necessary to protect uniquely federal interests in this matter.[6] Therefore, the court declines to formulate federal common law and finds that federal common law does not form sufficient basis to invoke federal court jurisdiction in this matter.

5. Even if plaintiff were required to assert a claim under another statute in conjunction with Section 1348, plaintiff would satisfy that condition. The court previously concluded that the United States has substantive rights and remedies under a separate federal statute, the FDCPA.

6. The United States urges, with respect to the FDCPA, that a federal common law of aiding and abetting fraud is necessary to fill the interstices in the statute. The government cites no cases

creating or importing federal common law into the comprehensive statutory structure of the FDCPA. Further, at this early stage, the government has not demonstrated that federal common law is necessary to implement the FDCPA. Therefore, the question of whether construction and application the FDCPA will require minor application of state or federal common law is not yet ripe for consideration.

## B. *United States' Standing*

Even though the court has statutory jurisdiction over this suit, it still may not hear the suit unless the plaintiff has standing to bring the suit. Article III of the United States Constitution requires that all plaintiffs establish standing to sue, i.e. a concrete, legally protected interest in the suit, before a federal court may hear the suit. *See Lujan v. Defenders of Wildlife,* —— U.S. ——, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Therefore, before the court may hear this matter, it must determine that the United States has standing to bring the suit.[7]

### 1. United States' Interest in Enforcing and Collecting Federal Judgments

■ This court entered judgment in favor of the FTC in *Security Rare Coin.* The FTC, in seeking and obtaining that judgment, was acting in pursuit of its statutory mandates, principally its mandate to protect consumers. *See* FTC Act, 15 U.S.C. §§ 41–45 *et seq.* It seems beyond dispute that an agency that has sufficient interest to obtain a judgment has an equal interest in the *enforcement* and satisfaction of that judgment, in furtherance of its statutory mandates. Plainly, the FTC would have sufficient interest in this suit to provide standing. However, the FTC is arguably barred from bringing suit against national banks under any circumstances. Therefore, the question in this suit brought by the United States on behalf of the FTC is whether the United States also has an interest sufficient to provide standing.

■ In cases in which both a federal agency and the United States itself have authority to bring suit, the United States is considered a real party in interest and the United States may bring suit even though the agency might have proceeded on its own behalf. *See* Wright, Miller and Kane, Feder-

al Practice and Procedure: Civil 2d § 1553 and cases cited therein. Certainly the United States is no less a real party in interest when a federal agency has an interest—here in enforcing its judgment—but is otherwise barred from seeking full vindication of that interest because the third party against which it would seek to enforce its judgment is immune to suit by the agency. *See also* Wright, Miller and Kane, Federal Practice and Procedure: Civil 2d §§ 1553 & 1562 and cases cited therein (federal agency lacking capacity to sue must have suit brought in name of United States).

■ As a matter of policy, a third party who allegedly dissipated assets subject to a federal agency judgment should not be effectively insulated from efforts to recover those assets simply because the specific subdivision of the government which obtained the judgment is precluded from suing the third party. Taken to its logical conclusion, NCB's argument would preclude the government from suing a bank to recover government funds embezzled by a bank, if the source of those funds was a judgment obtained by the FTC. To so hold would obstruct the pursuit of the FCC's statutory mandate, contravene the public interest and undermine respect for the law, judgments and the judicial process. This court does not understand the principles of standing to dictate such a result.

In support of its claim that the United States lacks standing to bring this action, NCB cites cases in which courts found the United States had insufficient interest in a suit to provide standing. *See United States v. Mattson,* 600 F.2d 1295 (9th Cir.1979); *United States v. Solomon,* 563 F.2d 1121 (4th Cir.1977). However, those cases are readily distinguishable from the present case because they involved a suit by the United States brought solely to vindicate the rights of individuals. Here, the United States' suit seeks to achieve the mandate of a federal statute and enforcement of a judgment already obtained by a federal agency. Fur-

---

7. Though 28 U.S.C. §§ 516 & 519 provide authorization for the United States to bring suit through the Attorney General, the United States still must establish it has an interest in this suit sufficient to provide standing. This is true regardless of whether the United States invokes

those specific statutory provisions or seeks to establish standing without a specific, independent statutory basis. *See, e.g., United States v. San Jacinto Tin Co.,* 125 U.S. 273, 286, 8 S.Ct. 850, 857, 31 L.Ed. 747 (1888).

ther, unlike those cases, the government has a clear financial interest in this suit. *See United States v. San Jacinto Tin,* 125 U.S. 273, 286, 8 S.Ct. 850, 857, 31 L.Ed. 747 (1888) (suggesting that government's "pecuniary interest in the remedy sought" is sufficient to confer standing and authority for it to bring suit).

Further, NCB concedes that the Federal Deposit Insurance Corporation, the Federal Reserve or other federal agencies charged with regulation of banks might be able to bring suit against it. Again, if federal agencies and corporations, which are essentially subdivisions and agents of the United States government, have capacity and standing to sue, certainly the United States, as principal, enjoys those same attributes and powers. Because the rights and powers delegated to agencies of the United States are logically subsumed within those of the United States, the United States must have power to sue at least equal to that of its agencies.

### 2. U.S. Not Lending Name to Suit by Private Parties

 Contrary to the contentions of the Bank, this is not a case in which the United States is merely lending its name to a suit properly brought by private parties. As discussed above, the FTC obtained the underlying judgment pursuant to its statutory mandate to protect consumers. In *Security Rare Coin,* the FTC sought an injunction against further violations of the FTC Act and other equitable relief. Thus the FTC was acting to protect the general public interest, in accordance with its statutory charge. The equitable monetary relief awarded in *Security Rare Coin* was unusual, but that relief did not transform the action into a fraud action brought on behalf of private individuals by the FTC. *See Security Rare Coin,* 931 F.2d at 1316; *FTC v. U.S. Sales Corp.,* 785 F.Supp. 737, 752–53; (N.D.Ill.1992) (FTC fraud actions are of different character altogether from private fraud actions).

In the present action, the United States is merely seeking to enforce the FTC's judgment and collect the full amount of the monetary equitable relief awarded in *Security Rare Coin.* The United States is suing on behalf of the FTC to collect funds which it alleges are properly subject to a federal court judgment rendered in favor of the FTC. The fact that the FTC obtained the underlying judgment in pursuit of its statutory mandate to protect consumers does not transform this into a suit on behalf of private individuals or deprive the United States of an interest in this suit.

Similarly, the fact that the bulk of the proceeds of any recovery in this action may eventually be distributed to consumers does not divest the United States of its interest in this suit. One reason the United States retains an interest is that not all the potential recovery in this suit would be distributed to consumers. Any relief awarded in the form of disgorgement of profits would be transferred to the United States Treasury and not to consumers. *See, e.g., FTC v. U.S. Rarities, Inc.,* Civ. No. 92–0363 (S.D.Fla.1992). Further, if distribution of funds in a consumer redress plan becomes impracticable, a court may order that the remaining funds be deposited in the U.S. Treasury. *See, e.g., FTC v. Amy Travel,* 1990–2 Trade Cases 69,160, 1990 WL 129658 (N.D.Ill.1990). Further, even assuming any and all funds recovered in this action were distributed to consumers, the United States would still have all the non-pecuniary interests previously discussed. The court concludes that the United States has clear, strong interests in this matter. Therefore, the United States has standing to bring this action.

### C. *Claims Against NCB as Constructive Trustee*

To the extent the plaintiff's constructive trustee claims rely on federal common law, the court finds it lacks jurisdiction to consider the claims. *See* discussion *supra* at I.A.4. Because it is not clear whether the United States seeks to assert claims against NCB as constructive trustee based on other law and because the parties have not addressed those issues, the court finds it premature to consider any such claims or rule on their viability today.

## II. LARKIN HOFFMAN

As described above, the United States alleges that the Larkin Hoffman law firm aid-

ed, abetted and conspired with William Ulrich to backdate and alter documents in order to defraud the FTC and defeat collection of its judgment. Like NCB, Larkin Hoffman moves to dismiss the entire action against it on the grounds that this court lacks subject matter jurisdiction and the plaintiff lacks standing.

### A. *Federal Jurisdiction*

#### 1. 28 U.S.C. §§ 1331, 1348 and 1367

■ As discussed earlier, *see supra* I.A.1, in order to invoke federal question jurisdiction, the plaintiff's claim must be based on some independent federal substantive law. *See* 28 U.S.C. § 1331. The United States contends that the FDCPA and its fraudulent transfer provisions provide the necessary federal substantive law to invoke this court's jurisdiction under Section 1331. However, unlike NCB, Larkin Hoffman is not a transferee and thus is not subject to the fraudulent transfer provisions of the FDCPA. The United States cites no other substantive provisions of the FDCPA or other federal statutes sufficient to confer federal question jurisdiction of this court over this suit with respect to defendant Larkin Hoffman.

Similarly, for the reasons discussed with respect to defendant NCB, *supra* at I.A.4, the court finds that creation of federal common law is inappropriate in this case. Because there is no statutory or common law basis for federal question jurisdiction in this matter and the plaintiff suggests no basis in the federal constitution or treaties of the United States, this court has no jurisdiction over the government's claims against Larkin Hoffman under Section 1331.

Because 28 U.S.C. § 1348 by its express terms applies to suits brought against national banks, it has no application to a suit against Larkin Hoffman, a law firm. In addition, because the court finds below that it has jurisdiction under 28 U.S.C. § 1345, it need not address whether it has supplemental jurisdiction over the claims against Larkin Hoffman pursuant to 28 U.S.C. § 1367.

#### 2. 28 U.S.C. § 1345

■ This court has jurisdiction to hear claims against Larkin Hoffman under 28 U.S.C. § 1345. As discussed above (I.A.2), the plain language of Section 1345 makes it clear that federal district courts have jurisdiction over all civil claims brought by the United States—unless Congress provides otherwise. *See FSLIC v. Ticktin*, 490 U.S. 82, 109 S.Ct. 1626, 104 L.Ed.2d 73 (1989). This is a civil claim brought by the United States itself, not a federal agency. No party has cited any Act of Congress divesting this Court of jurisdiction over this type of claim.

Because the court finds none of the federal statutory or federal common law claims pleaded in this matter properly apply to defendant Larkin Hoffman, the only remaining substantive law basis for this suit against that defendant is state common law. Although the plaintiff's complaint is not entirely clear in this regard, the court reads it to allege federal and state common law claims against Larkin Hoffman. Though the application of state common law alone in a federal action appears somewhat extraordinary, the broad scope of the plain language of Section 1345 provides jurisdiction for this court to hear *any* civil claim brought by the United States. The parties cite no federal statute or other law barring exercise of federal court jurisdiction over state common law claims brought by the United States. Therefore, pursuant to 28 U.S.C. § 1345, this court has jurisdiction to hear the United States' state common law claims against Larkin Hoffman.[8]

### B. *Standing*

As fully discussed supra (I.B), the United States has sufficient interest in this matter to provide standing to bring suit.

### CONCLUSION

The United States has sufficient interest in this matter to provide standing to bring suit. Further, this court has subject matter jurisdiction to hear the plaintiff's claims against

---

**8.** The court today holds only that it has jurisdiction to hear state common law claims against Larkin Hoffman. As is appropriate, the court makes no comment on the validity or strength of those claims at this juncture. *See Bell v. Hood*, 327 U.S. 678, 682–83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946).

defendant NCB, pursuant to 28 U.S.C. §§ 1331, 1345 and 1348. The court also has jurisdiction to hear state common law claims against defendant Larkin Hoffman, pursuant to 28 U.S.C. § 1345.

Accordingly, **IT IS HEREBY ORDERED THAT:**

Defendant National City Bank's motion to dismiss (Clerk Docket No. 8) is DENIED;

Defendant Larkin Hoffman's motion to dismiss (Clerk Docket Nos. 8 & 11) is GRANTED as to all claims except state common law claims brought pursuant to 28 U.S.C. § 1345; and

Defendant Larkin Hoffman's motion to dismiss is DENIED with respect to state common law claims brought pursuant to 28 U.S.C. § 1345.