772 F.2d 55
 DURKIN, Lorraine A., Appellant,
v.
The NATIONAL BANK OF OLYPHANT, Check, Michael, J.; Crotti,
Joseph; Friedman, Sheldon; Gentile, Fred J.;
Kaplan, Saul; Rossi, Robert; Wassell,
Joseph J. Zipay, Jr., Edward J.
 No. 84-5875.
 United States Court of Appeals,
Third Circuit.
 Argued July 18, 1985.
Decided Sept. 12, 1985.
 
 Andrew Hailstone (argued), Bruce L. Morgan, Henkelman, Kreder, O'Connell & Brooks, Scranton, Pa., for appellant.
 Morey M. Myers (argued), William W. Warren, Jr., Gelb, Myers, Bishop & Warren, Scranton, Pa., for appellees.
 Before SEITZ, HIGGINBOTHAM and SLOVITER, Circuit Judges.
 OPINION OF THE COURT
 A. LEON HIGGINBOTHAM, Jr., Circuit Judge.
 
 
 1
 Lorraine Durkin, a shareholder of the defendant National Bank of Olyphant and the plaintiff in this corporate suffrage case, appeals from a final order of the district court dismissing her complaint for failure to state a claim upon which relief can be granted. Because we find that the National Bank Act, 12 U.S.C. Sec. 21 et seq., guarantees shareholders of national banks the voting rights that she alleges defendants violated, we reverse and remand for further proceedings.
 
 I.
 
 2
 Durkin's grievance with the National Bank of Olyphant (NBO) and its directors stems from events surrounding the NBO's April 10, 1984 annual meeting and election.[1] After receiving notice of the meeting and a management proxy on March 22, 1984, on March 26, 1984 Durkin filed a proper notice of her intent to nominate herself for a position on the Board of Directors with the Bank and with the Office of the Comptroller of the Currency, as required by law. On April 2 the board of directors amended the by-laws to prohibit any shareholder whose spouse is affiliated with any other bank from serving as a director. Durkin, whose husband is employed by another bank, received notice of the by-law change and NBO's intent to apply it to disqualify her as a nominee on Saturday, April 7, 1984--three calendar days and only one business day before the election. The time period for making nomi nations had lapsed by this date. The election proceeded as scheduled, at which time the presiding NBO official rejected her nomination and disallowed ballots cast for her. Each management nominee received 17,054 votes; had her nomination been accepted, Durkin would have received 32,000 votes.
 
 
 3
 Durkin then commenced this suit alleging, inter alia, that the by-law was adopted for the express purpose of preventing her election, and that the board's conduct deprived her of the voting rights incident to her stock ownership and protected by 12 U.S.C. Sec. 61. She seeks a declaratory judgment to the effect that she was elected to office at the April 10, 1984 meeting, an injunction barring the NBO board of directors from meeting or transacting NBO business until she is "acknowledged" as a director, and compensatory damages. The United States District Court for the Middle District of Pennsylvania dismissed her complaint pursuant to Fed.R.Civ.P. 12(b)(6), finding Durkin's failure to attempt to nominate another candidate after the by-law change rendered her ineligible to serve on the board fatal to her claim that she was deprived of federally protected voting rights. Durkin appeals from this judgment. NBO argues that the district court's judgment of dismissal should be affirmed regardless of the requirement's validity because there was no federal subject matter jurisdiction over the case.
 
 II.
 
 4
 We turn first to the jurisdictional issue, as it implicates our power to hear this appeal.
 
 
 5
 The district court based its jurisdiction on 28 U.S.C. Sec. 1337, which empowers federal courts to hear claims arising under federal statutes regulating commerce[2]--in this case 12 U.S.C. Sec. 61, a portion of the National Bank Act[3] and the source of the voting rights Durkin claims the Bank infringed.[4] NBO urges us to reverse this jurisdictional holding on the ground that the National Bank Act is not an act of Congress regulating commerce within the meaning of Sec. 1337 or, in the alternative, because the voting rights Sec. 61 grants do not include the right to make nominations and Durkin's claim thus does not "arise under" the statute.[5] We shall consider each of these contentions in turn.
 
 A.
 
 6
 A statute need not create positive regulations imposing a duty or prescribing some conduct in order to be deemed one regulating commerce for Sec. 1337 purposes; it need only have been enacted under Congress' constitutional power to regulate commerce. Imm v. Union Railroad Company, 289 F.2d 858 (3d Cir.1961). Courts have recognized since McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316, 17 U.S. 316 (1819), that the Commerce Clause was at least a partial and a significant source of power for the creation and regulation of national banks; thus the three courts of appeals that have addressed the issue have all held that the National Bank Act is an act regulating commerce within the meaning of Sec. 1337. See Cupo v. Community National Bank and Trust Company of New York, 438 F.2d 108, 110 (2d Cir.1971); Partain v. First National Bank of Montgomery, 467 F.2d 167, 171-72 (5th Cir.1972); Burns v. American National Bank and Trust Company, 479 F.2d 26, 29-30 (8th Cir.1973). The Burns and Cupo courts so held over objections similar to that which NBO raises here: that 28 U.S.C. Sec. 1348, which grants federal jurisdiction over certain enumerated actions involving national banks,[6] precludes the exercise of jurisdiction under any other jurisdictional statute in cases involving national banks. After a thoughtful historical analysis of the jurisdictional controversies surrounding national banks and the enactment of Sec. 1348, the Burns court concluded that "section 1348 ... was intended to eliminate the right of national banks to claim original or removal jurisdiction solely on the basis of being a nationally chartered corporation, and was not intended to eliminate jurisdiction in all suits involving national banks except those actions specifically permitted in the first paragraph thereof." Burns, 479 F.2d at 28-29 (emphasis in original). Cupo, too, held that Sec. 1348 "in no way negates federal jurisdiction under grants such as section 1337." Cupo, 438 F.2d at 110. The two district courts in this circuit that have considered the issue agreed, see Haas v. Pittsburgh National Bank, 60 F.R.D. 604, 609 (W.D.Pa.1973), and Acker v. Provident National Bank, 373 F.Supp. 56, 62-63 (E.D.Pa.1974), modified on other grounds, 512 F.2d 729 (3d Cir.1975), and so do we.
 
 B.
 
 7
 The district court properly exercised jurisdiction if Durkin's claim "arises under" 12 U.S.C. Sec. 61. The question before us, therefore, is whether the voting rights Sec. 61 guarantees include the right to nominate candidates for directorships. We hold that they do.
 
 
 8
 Federal law has long protected the voting rights of national bank shareholders. Section 11 of the National Bank Act of 1864, 13 Stat. 102, R.S. 5144, from which 12 U.S.C. Sec. 61 is derived, explicitly granted both the right to vote and the right to do so by proxy.[7] Section 17 of the Banking Act of 1933, 48 Stat. 186, added cumulative voting to these rights. The 1933 Act was Congress' response to the corrupt practices involved in the 1929 collapse of the banking system. See 77 Cong.Rec. 3835 (1933) (statement of Rep. Steagall). The congressman advocating inclusion of cumulative voting during the debate on the bill saw it as crucial to preventing the targeted practices: by guaranteeing a modicum of minority representation on national bank boards, cumulative voting would act "in the nature of a brake upon the wild and extravagant practices" Congress was condemning, allowing minority shareholders to prevent "many of the excesses, many of the abuses, much of the malfeasance and misfeasance" perpetrated by banks and bank officers. 77 Cong.Rec. 4025 (1933) (statement of Rep. Celler). The current version of Sec. 61 was thus clearly designed to curb the power of those who control the affairs of national banks.
 
 
 9
 We must define the scope of Sec. 61 voting rights in a fashion consistent with Congress' articulated purpose in creating them. C.I.R. v. Engle, 464 U.S. 206, 104 S.Ct. 597, 604, 78 L.Ed.2d 420 (1984); Gartner v. Soloner, 384 F.2d 348, 355 (3d Cir.1967), cert. denied, 390 U.S. 1040, 88 S.Ct. 1633, 20 L.Ed.2d 302 (1968); Brown v. Secretary of Health and Human Services, 747 F.2d 878, 881 (3d Cir.1984). To interpret Sec. 61 rights as excluding nominating rights, as NBO urges, would violate this legislative intent by allowing the management of national banks to control the slates of director candidates, effectively eliminating any possibility of minority representation and assuring themselves unbridled control over bank affairs. Declining to give Sec. 61 a reading that so defeats its purpose, we hold that the statute gives national bank shareholders the right to nominate candidates to the board of directors.
 
 
 10
 We rest our holding as well on the common sense notion that the unadorned right to cast a ballot in a contest for office, a vehicle for participatory decisionmaking and the exercise of choice, is meaningless without the right to participate in selecting the contestants. As the nominating process circumscribes the range of the choice to be made, it is a fundamental and outcome-determinative step in the election of officeholders. To allow for voting while maintaining a closed candidate selection process thus renders the former an empty exercise. This is as true in the corporate suffrage context as it is in civic elections, where federal law recognizes that access to the candidate selection process is a component of constitutionally-mandated voting rights. See United States v. Classic, 313 U.S. 299, 316-317, 61 S.Ct. 1031, 1038, 85 L.Ed. 1368 (1941) (article I, section 2 right to choose congressional representatives includes the right to participate in primary elections); Smith v. Allwright, 321 U.S. 649, 661-662, 64 S.Ct. 757, 763-64, 88 L.Ed. 987 (1944) (fifteenth amendment prohibition of race-based abridgement of voting rights applies to primary as well as general elections). Banks do not exist for the purpose of creating an aristocracy of directors and officers which can continue in office indefinitely, immune from the wishes of the shareholder-owners of the corporation. And there is no more justification for precluding shareholders from nominating candidates for their board of directors than there would be for public officials to deny citizens the right to vote because of their race, poverty or sex. Cf. U.S. Const. amends. XV, XXIV, and XIX.
 
 
 11
 The meaning and purpose of the voting process, then, as well as the legislative intent underlying Sec. 61, lead us to conclude that Durkin's claim arises under the National Bank Act. The district court properly exercised its Sec. 1337 jurisdiction.[8]
 
 III.
 
 12
 We must also consider NBO's suggestion that the May, 1985 shareholders meeting and election held by Upper Valley Bankcorp, Inc., the product of a recent corporate reorganization whereby all NBO shares were converted to Upper Valley shares and Upper Valley became the sole NBO shareholder, moots this appeal. Durkin did not attempt to nominate herself or any other candidate during that election, and abstained from voting.
 
 
 13
 Durkin's viable claim for damages, articulated at oral argument as directors' fees and litigation costs, saves her case from mootness. Memphis Light, Gas and Water Division v. Craft, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978); Galda v. Bloustein, 686 F.2d 159 (3d Cir.1982). Her apparent lack of continued interest in nominating a candidate does not change this result: "it does not matter that the damage claim might be said to be secondary or incidental to the claim for injunctive relief," even where the injunctive claim might be moot. Ammond v. McGahn, 532 F.2d 325, 328 (3d Cir.1976), citing Powell v. McCormack, 395 U.S. 486, 499-500, 89 S.Ct. 1944, 1952-53, 23 L.Ed.2d 491 (1969). Because a declaration that she would have been elected to the board of directors in 1984, absent NBO's allegedly illegal conduct, could be relevant to the amount of her damages, her request for declaratory relief is, likewise, not moot.
 
 IV.
 
 14
 Turning to the merits of NBO's adoption and application of a by-law prohibiting shareholders whose spouses are affiliated with another bank from serving as directors, we first note that federal law empowers national banks to adopt by-laws regulating the manner in which directors are elected, so long as they are not inconsistent with law. 12 U.S.C. Sec. 24. The by-law in dispute here certainly meets this criterion; we can find no basis for holding that a national bank may not, through its by-laws, protect itself from the conflicts of interest that arise when spouses represent competing corporations.[9] We are faced with a substantively valid by-law, the application of which is alleged to be inconsistent with law because its timing barred Durkin from exercising her Sec. 61 nominating rights. The district court held that Durkin failed to state a Sec. 61 claim because her own actions, rather than NBO's adoption and application of the new by-law, precluded her from nominating an eligible candidate of her choice to the board of directors. The court reasoned that even though the deadline for making nominations had passed, Durkin could have at least attempted to nominate another candidate after learning that the new by-law disqualified her from holding office; instead, she chose to insist upon her own nomination at the annual meeting. Having decided to "stand pat" on her nomination in the face of an "available" remedy for the vindication of her nominating rights, she could not legitimately claim that NBO violated those rights. We infer from this rationale that the court would have found a viable Sec. 61 claim had Durkin attempted, and NBO rejected, a second nomination of a candidate qualified under the amended by-laws.
 
 
 15
 The issue before us, then, is whether a national bank shareholder whose validly nominated candidate is retroactively disqualified from holding office by the enactment and application of a facially valid by-law loses the protection of Sec. 61 by insisting upon the eligibility of her nominee. We hold that she does not.
 
 
 16
 Whether a second nomination attempt is a prerequisite for bringing a Sec. 61 nominating rights claim is a question of first impression in this circuit. The court below relied exclusively upon McKee and Company v. First National Bank of San Diego, 265 F.Supp. 1 (S.D.Cal.1967), aff'd, 397 F.2d 248 (9th Cir.1968), in imposing the requirement. In that case, shareholder McKee nominated two candidates for board of director slots one week after the bank approved a valid by-law amendment rendering them ineligible to serve. He received notice of the amendment six days before the deadline designated by the bank by-laws for submitting nominations, and nineteen days before the annual meeting and election. McKee stood by his nominations, making no attempt to nominate eligible candidates. After his nominees were disqualified at the annual meeting he sued the bank, arguing that the amended by-law was unreasonably applied because he had insufficient time, in light of the nomination deadline, to nominate qualified directors in their stead. The court rejected his claim because no bank by-law prevented the board from waiving the nomination deadline and accepting out-of-time nominations; "[t]here was a possible remedy available to plaintiff and even though plaintiff believed prospects of relief were remote, no effort was made to pursue or secure that remedy." McKee, 265 F.Supp. at 12 (emphasis in original).
 
 
 17
 McKee is distinguishable from the case before us because the timing of key events that is crucial to Durkin's alleged deprivation differs from the McKee sequence. First, and most important, McKee nominated ineligible candidates after the by-law disqualifying them was enacted; Durkin made her nomination before NBO amended its by-laws, and was qualified to serve under the by-laws in effect at that time. McKee learned his candidates were ineligible nineteen days before the annual meeting; Durkin was notified on a Saturday, just one business day and three calendar days before the meeting, leaving her far less, if any, time to choose another nominee and marshal support for him or her. Finally, we note that McKee's nominees were rendered ineligible within the nomination period, suggesting that he did not have to make an out-of-time nomination in order to exercise his nominating rights (and that the court's statement about out-of-time nominations may be dictum); the by-law disqualifying Durkin as a nominee was passed after the nomination period ended.
 
 
 18
 The McKee court cited no authority for imposing an exhaustion of remedies requirement upon shareholder nominating rights. While we express no opinion as to the correctness of that court's holding on the facts before it, certainly in this case, which is so factually distinct, an exhaustion requirement would be inappropriate. Application of the district court's interpretation of the McKee rule to Durkin's claim would protect her Sec. 61 rights in form only, giving her the right to make a nomination but denying her a reasonable opportunity to seek support for the candidate of her choice.[10] By acting to disqualify Durkin so close to the date of the election, NBO effectively foreclosed any meaningful exercise of her nominating rights.[11] Durkin's decision to "stand pat" on her nomination in no way contributed to this result, nor would a second nomination attempt have ameliorated it. She retains the protection of Sec. 61, and has stated a viable claim for relief.[12]
 
 
 19
 A national bank may not enact and apply by-law amendments in a manner that eviscerates Sec. 61 nominating rights and then escape the consequences of its actions simply because the nominating shareholder declines to undertake the dubious task of recruiting a qualified and willing nominee on unreasonably short notice, or to perform the empty exercise of naming a candidate for whom there is no time to garner support. After deciding on the virtual eve of the election to adopt a facially valid by-law that had the effect of nullifying Durkin's otherwise proper nomination, the board of directors had only two legitimate options. It was compelled either to postpone the annual meeting long enough to allow Durkin a reasonable opportunity to seek and nominate another candidate, or to apply the new by-law prospectively only, accepting her nomination at the annual meeting and counting the votes cast in her favor. Having done neither, NBO will be liable to her if she can prove her allegations.
 
 CONCLUSION
 
 20
 For the foregoing reasons, the judgment of the district court will be reversed, and the case remanded for further proceedings consistent with this opinion.
 
 
 
 [1]
 In reviewing this dismissal for failure to state a claim upon which relief can be granted, we treat the factual allegations of the complaint as truthful. Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)
 
 
 [2]
 28 U.S.C. Sec. 1337 provides in pertinent part:
 (a) The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies....
 
 
 [3]
 12 U.S.C. Sec. 61 is derived from an Act of June 3, 1864, 13 Stat. 102, which was later designated the National Bank Act. See historical note, 12 U.S.C.A. Sec. 61 and 12 U.S.C. Sec. 38
 
 
 [4]
 The relevant portion of 12 U.S.C. Sec. 61 provides:
 In all elections of directors, each shareholder shall have the right to vote the number of shares owned by him for as many persons as there are directors to be elected, or to cumulate such shares and give one candidate as many votes as the number of directors multiplied by the number of his shares shall equal, or to distribute them on the same principle among as many candidates as he shall think fit...
 
 
 [5]
 NBO would also divest the district court of jurisdiction on the ground that this case is a dispute over the qualifications of bank directors rather than one implicating Sec. 61 voting rights and thus, according to NBO, a matter of state law. This characterization is without merit. We note, in any event, that it is federal law which empowers national banks to regulate director qualifications. See 12 U.S.C. Sec. 24. Equally meritless is NBO's contention that state law governs the conduct of national bank elections. This proposition ignores the express regulatory content of Sec. 61, and is without support in the case law
 
 
 [6]
 28 U.S.C. Sec. 1348 provides:
 The district courts shall have original jurisdiction of any civil action commenced by the United States, or by direction of any officer thereof, against any national banking association, any civil action to wind up the affairs of any such association, and any action by a banking association established in the district for which the court is held, under chapter 2 of Title 12, to enjoin the Comptroller of the Currency, or any receiver acting under his direction, as provided by such chapter.
 All national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located.
 
 
 [7]
 Section 13 provided:
 in all elections of directors, and in deciding all questions at meetings of shareholders, each shareholder shall be entitled to one vote on each share of stock held by him. Shareholders may vote by proxies duly authorized in writing; but no officer, clerk, teller, or book-keeper of such association shall act as proxy; and no shareholder whose liability is past due and unpaid shall be allowed to vote.
 
 
 [13]
 Stat. 102
 
 
 [8]
 From our holding that the instant claim arises under the National Bank Act, it follows that the lower court had 28 U.S.C. Sec. 1331 federal question jurisdiction as well
 
 
 [9]
 Federal policy disfavors interlocking directorates in the banking industry, and so supports the legitimacy of NBO's interest in safeguarding itself from directors with conflicting loyalties. See 15 U.S.C. Sec. 19, which prohibits officers, directors, and employees of banks in the Federal Reserve System from simultaneously serving as an officer, director, or employee of any other bank
 
 
 [10]
 We question whether three days is sufficient time for completing even the initial step of recruiting a qualified and willing nominee
 
 
 [11]
 Imposing a second attempt requirement on these facts might violate the federal voting rights of other shareholders as well as Durkin's. Section 61 grants shareholders the right to vote by proxy in elections for directors. The logistics of proxy solicitation and voting preclude the possibility of meaningful proxy voting if shareholders first learn who is running for office three days before the election. The detail of the federal regulations governing proxy solicitations for national bank elections, set out at 12 C.F.R. Sec. 11.5, underscores both the strong federal policy of protecting the integrity of the proxy process and the impossibility of proxy voting three days after a nomination is made
 
 
 [12]
 In view of our holding, we need not reach Durkin's contention that the district court erred by failing to accept her pleaded allegation that the by-law was adopted for the express purpose of preventing her election (and, inferentially the election of any candidate she may have backed) and consequently refusing to relieve her of the second attempt requirement on the ground that such an attempt would have been futile under the circumstances