**AHI METNALL, L.P. by its General Partner AHI KANSAS, INC.,**
**Plaintiff,**

v.

**J.C. NICHOLS COMPANY,**
**et al., Defendants.**

**No. 95–0176–CV–W–1.**

United States District Court,
W.D. Missouri,
Western Division.

April 11, 1995.

Timothy McNamara, Daniel Dibble, Lathrop & Norquist, Kansas City, MO, for plaintiff.

Larry McMullen, Blackwell Sanders, Kansas City, MO, John Cozad, Morrison & Hecker, Kansas City, MO, for defendants.

## PRELIMINARY INJUNCTION ORDER

WHIPPLE, District Judge.

Pending before the Court is Plaintiff's motion for preliminary injunction. Said motion together with Plaintiff's suggestions in support, Defendants' suggestions in opposition, Plaintiff's reply suggestions, and all primary and supplemental proposed findings of fact and conclusions of law were reviewed by the Court. After due consideration of the above and all of the evidence submitted at the evidentiary hearing held on March 29, 1995, for the reasons set forth below, the motion is granted.

## I. FACTUAL BACKGROUND

Plaintiff, a minority shareholder of Defendant J.C. Nichols Company ("JCN"), owns 11,861 shares of JCN stock. These shares constitute approximately 6% of the total outstanding stock of JCN. Plaintiff asserts that certain amended bylaws of JCN are void and unenforceable. The challenged bylaws, §§ 7(a)(ii) and 7(a)(iii), require that a shareholder own at least 20% of JCN stock before he or she may nominate a candidate for the board of directors or propose items of business at shareholder meetings. Plaintiff also claims that certain shares of JCN stock are precluded from being voted because they are pledged to JCN. Accordingly, Plaintiff asks the Court to enjoin Defendants from enforcing the amended bylaws, to declare certain shares ineligible to vote, and to postpone any shareholder meetings pending a final hearing on the merits.

Defendant Lynn McCarthy is Chief Executive Officer of JCN and President of the JCN Board of Directors. The other individual Defendants are directors of JCN. Plaintiff is affiliated with the investment banking firm of Allen & Company Incorporated ("Allen"). Beginning in 1990, Allen was engaged by JCN as an investment advisor to help the company find additional sources of capital.

In 1987, the JCN Board created the JCN Employee Stock Ownership Trust ("ESOT") to allow JCN employees an opportunity to purchase equity in the company while providing liquidity for existing shareholders who wished to sell their stock. To finance its operations the ESOT borrowed roughly $50,000,000 from local commercial banks and $48,246,000 from JCN. With this money the ESOT purchased 133,684 outstanding shares of JCN stock. The bank debt was to be repaid by employee contributions to the ESOT as well as dividends received on the stock owned by the ESOT. Due to a downturn in the real estate market in the late 1980's, JCN sold its hotel division, thus, sub-

stantially reducing the number of its employees, and consequently, the amount of employee contributions to the ESOT. As a result, the ESOT was unable to make its loan payments to the commercial banks. Because it was a guarantor of these loans, JCN made the scheduled payments on behalf of the ESOT in 1989, 1990, and 1991.

Shortly before May of 1992, JCN paid off the commercial bank debt owed by the ESOT and the ESOT issued a new promissory note ("the ESOT Note") to JCN for $94,340,000. As collateral for this debt, the ESOT stock was pledged to JCN. In May of 1992, the Bowser Limited Partnership ("Bowser"), which is controlled by Defendant McCarthy, acquired 125,242 shares of JCN stock from the ESOT. As part of this transaction, Bowser assumed the ESOT Note and accrued interest payable to JCN. Bowser also executed a nonrecourse note in favor of JCN for $124,528,655.79. Because the stock acquired by Bowser had been pledged to JCN by the ESOT, Bowser executed a pledge agreement in favor of JCN. At that time, Bowser also delivered the pledged stock certificates to JCN.

In October of 1994, Allen and a co-investor, Harvard Private Capital Corporation, submitted a proposal to Defendant McCarthy whereby they sought to buy a controlling interest in JCN ("the Allen Plan"). The Allen Plan, which was subject to approval by the JCN Board, was ultimately rejected by the JCN Board as grossly inadequate. Defendant McCarthy and other JCN Board members stated at the hearing that they considered this and several other actions by Allen to be hostile. In addition to the Allen Plan, the actions perceived as hostile included a threatened shareholder derivative suit and remarks by representatives of Allen at a JCN Board meeting. As a result of these perceived hostilities, at its January 3, 1995 meeting, the JCN Board appointed a bylaws committee ("Special Committee") to determine how to protect JCN from unwanted takeover bids.

On January 25, 1995, the Special Committee recommended that the JCN Board adopt a new set of bylaws requiring, among other things, that shareholders who did not own an increased percentage of JCN stock could not nominate directors or propose business at shareholder meetings. The Board followed the recommendations of the Special Committee and adopted an amended version of its bylaws. However, the 20% stock ownership requirement that was ultimately adopted originated with the full Board, as the Special Committee did not recommend a specific percentage. The amended bylaws were distributed to JCN shareholders along with a letter from Defendant McCarthy dated February 13, 1995. This letter did not mention that the bylaws had been amended.

## II. DISCUSSION

■ The standard for granting a preliminary injunction in the Eighth Circuit requires consideration of four factors:

1) the probability of success on the merits;

2) the threat of irreparable harm to the movant;

3) the balance between this harm and the injury that granting the injunction will inflict on other interested parties; and

4) whether the issuance of an injunction is in the public interest.

*Sanborn Mfg. Co. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 485–86 (8th Cir. 1993); *Dataphase Systems, Inc. v. C.L. Systems, Inc.*, 640 F.2d 109, 114 (8th Cir.1981) (*en banc*).

### A. Probability of Success on the Merits

Under the Eighth Circuit standards for granting a preliminary injunction, Plaintiff must first demonstrate a probability of success on the merits of this dispute. In essence, this action raises only two issues: 1) whether the 20% stock ownership requirements in the amended bylaws are enforceable; and 2) whether Bowser is entitled to vote its shares of JCN stock that are pledged to JCN. The Court will consider each question in turn.

#### 1. 20% stock ownership requirements

Plaintiff challenges the requirement established in amended bylaw number 7(a)(ii), which states that "[n]ominations for the election of directors may be made by ... any

record owner of shares totaling 20% or more of the total number of shares entitled to vote in the election of directors generally." In addition, Plaintiff challenges amended bylaw number 7(a)(iii), which states that "[b]usiness proposed to be brought before any shareholder meeting may be proposed by the board of directors or by any record owner of shares totaling 20% or more of the total number of shares entitled to vote on such matter at a meeting." Because Bowser is the only shareholder owning 20% or more of the total number of JCN shares, these bylaw amendments effectively preclude Plaintiff or any other shareholder from nominating a director or proposing any business at shareholder meetings.

Defendants assert that the bylaw changes approved by the JCN Board must be evaluated under the business judgment rule. The business judgment rule is a deferential standard that presumes directors exercise their business judgment with due care and good faith in the best interest of the corporation. *Torchmark Corp. v. Bixby*, 708 F.Supp. 1070, 1081 (W.D.Mo.1988) (citation omitted). However, in that these bylaw changes were adopted in response to a hostile takeover threat by Allen, Defendants will be afforded the protections of the business judgment rule only if their actions complied with the standards set forth in *Unocal Corp. v. Mesa Petroleum Co.*, 493 A.2d 946 (Del. 1985). The *Unocal* court established a two-part test that a board of directors must meet in adopting such takeover defenses. First, the board must show that it had reasonable grounds for believing that a threat to corporate policy and effectiveness existed. Second, the board's response to the perceived threat must be proportional to the threat posed. *Id.* at 955.

With regard to the Board's belief that a threat to corporate policy and effectiveness existed, the Board must show that it acted in good faith and made a reasonable investigation. *Id.* at 955. Defendants correctly posit that the Court need only determine the reasonableness of the Board's perception of a threat to corporate policy and effectiveness, not whether such a threat actually existed.[1] Defendants suggest that the following incidents contributed to their perception that Allen's actions were a threat to JCN corporate policy and effectiveness: Allen's bid to buy a controlling interest in JCN that they deemed was grossly inadequate; Plaintiff's threat to file a derivative suit challenging certain alleged insider transactions by Defendant McCarthy; and statements made by an Allen representative at a December JCN Board meeting, to the effect that litigation would ensue if the Allen Plan was rejected.

It is important to recognize that unlike the present case, the directors in *Unocal* were seeking to oppose an actual takeover bid that had been submitted directly to shareholders. No bid has been submitted directly to shareholders by Plaintiff and the Allen Plan was made contingent on approval from the JCN Board. Further, the transactions in *Unocal* had been approved by a board comprised of a majority of outside independent directors. *Id.* at 955. Such is not the case here.

The Court finds that the Board's perception of a threat from Allen based on the above actions was not reasonable. The Court heard testimony from three members of the Special Committee as well as from Defendant McCarthy. With the exception of George Russell, each of these witnesses testified that they were aware at the time of the Special Committee's meetings that Defendant McCarthy controlled over 50% of the outstanding stock of JCN. Because they were aware that Defendant McCarthy controlled a majority of JCN stock, the Special Committee could not have reasonably perceived that Allen would be able to disrupt corporate policy or effectiveness. Moreover, some of the conduct that the Board claims was hostile, such as the threatened derivative suit, was directed only at alleged insider transactions by Defendant McCarthy. While Allen's actions may have been bothersome, particularly to Defendant McCarthy, they did not pose a legitimate threat to the corpora-

---

1. As was clear from the evidence at the hearing, no actual takeover threat existed because Defendant McCarthy controls, either personally or through Bowser, roughly 77% of all outstanding JCN stock and suggested that he has no current plans to sell his stock.

tion. The total disenfranchisement of the right of every shareholder, except Defendant McCarthy, to nominate directors or propose business was not a reasonable reaction to the perceived threats.

The second *Unocal* factor requires the Board to demonstrate that its response to the perceived Allen takeover threat was proportional to the threat posed. As noted above, the Board's imposition of the 20% stock ownership requirement in certain by-laws completely precludes Plaintiff or any other shareholder from nominating a director or proposing any business at shareholder meetings. "A board's unilateral decision to adopt a defensive measure ... that purposefully disenfranchises its shareholders is strongly suspect under *Unocal,* and cannot be sustained without a 'compelling justification.'" *Stroud v. Grace,* 606 A.2d 75, 92 n. 3 (Del.1992). As noted above, no such justification is present here.

Even if the Board considered the possibility that the Bowser shares would be decreed ineligible to vote, the 20% requirements still go too far. When the Bowser shares are factored out of the equation, no single JCN shareholder, aside from Defendant McCarthy, owns 20% or more of the stock.[2] Consequently, under amended bylaws 7(a)(ii) and 7(a)(iii), only Defendant McCarthy or the current Board may propose director candidates or propose business at shareholder meetings. The Board's defensive measures clearly go too far and cannot be considered proportional to any perceived takeover threat. Because the Court finds that Defendants cannot avail themselves of the *Unocal* rule, the favorable presumptions provided by the business judgment rule are not available to Defendants. Therefore, the Court will now turn to an examination of Plaintiff's substantive claims concerning the disenfranchisement of JCN's minority shareholders.

Plaintiff claims that the Board cannot legally disenfranchise all minority shareholders from nominating directors or proposing business at shareholder meetings. The parties do not cite, and the Court is unable to locate, any decision by the Eighth Circuit Court of Appeals on this issue. However, other courts have wrestled with such questions. Plaintiff relies primarily on *Durkin v. National Bank of Olyphant,* 772 F.2d 55 (3d Cir.1985). In *Durkin,* after the plaintiff shareholder gave notice of her intention to nominate herself for a position on the bank's board of directors, the board amended the bylaws to prohibit shareholders from serving as directors if their spouse was affiliated with any other bank. Because this amendment disqualified the plaintiff from consideration as a director, she alleged that it violated her voting rights as a shareholder. *Id.* at 56–57.

The *Durkin* court held that 12 U.S.C. § 61, the statute governing national bank shareholder rights, implicitly gives shareholders the right to nominate directors via their right to vote. Otherwise, management would be allowed "to control the slates of director candidates, effectively eliminating any possibility of minority representation and assuring themselves unbridled control over bank affairs." *Id.* at 59. The court went on to state that "the unadorned right to cast a ballot in a contest for office, a vehicle for participatory decisionmaking and the exercise of choice, is meaningless without the right to participate in selecting the contestants." *Id.* Plaintiff also asserts that the right to propose business at shareholder meetings is an implicit part of a shareholder's right to vote. *New York City Employees' Retirement System v. American Brands, Inc.,* 634 F.Supp. 1382 (S.D.N.Y.1986).

Plaintiff draws an analogy between *Durkin* and *American Brands* and Section 351.245(1) of the Revised Statutes of Missouri. Plaintiff claims that Section 351.245(1) gives Missouri corporate shareholders an implicit right to nominate directors. Section 351.245(1) provides that, unless altered by

---

**2.** The amended bylaws require a shareholder to individually own "20% or more of the total number of shares entitled to vote on such matter[s]." Defendant McCarthy owns 14,000 shares of JCN stock himself. Plaintiff owns 11,861 shares. All other shareholders own a fewer number of shares. When Bowser's 125,242 shares are ex-

cluded from the total shares outstanding of 192,320, only 67,078 shares are rendered eligible to vote. Twenty percent of 67,078 is 13,416. Notably, even without the Bowser shares, only Defendant McCarthy has greater than 13,416 shares and qualifies under the Board's 20% requirement.

the corporation's articles of incorporation, "each outstanding share ... shall be entitled to one vote on each matter submitted to a vote at a meeting of shareholders." JCN's articles of incorporation do not alter this statutory presumption.

Absent any directive from the Eighth Circuit, this Court adopts the sound reasoning and conclusion of the *Durkin* court and finds that the rights to nominate director candidates and propose business are integral components of a shareholder's right to vote. By effectively disenfranchising every shareholder of JCN except Defendant McCarthy, the Board's 20% stock ownership requirements unreasonably impinge this right. Further, such measures do not constitute valid takeover defenses under the *Unocal* test. Consequently, Plaintiff has shown a very strong likelihood of success on the merits of this issue.

### 2. Voting of hypothecated shares

■ Plaintiff contends that Defendant McCarthy is not entitled to vote the JCN stock that he controls through Bowser because those shares are pledged to JCN and the voting of pledged stock is prohibited by Section 351.245(2) of the Revised Statutes of Missouri. Section 351.245(2) provides that "[n]o person shall be admitted to vote on any shares belonging or hypothecated to the corporation which issued the shares." The parties do not dispute that the Bowser shares are pledged to JCN, however, they strongly disagree on whether the word "hypothecate," as used in Section 351.245(2), is applicable to the instant facts.

Determining the definition of "hypothecate" is the logical starting point for the Court's analysis. A review of the relevant Missouri case law fails to yield a definition for this word. However, hypothecate is defined in *Black's Law Dictionary* as follows:

> To pledge property as security or collateral for a debt. Generally, there is no physical transfer of the pledged property to the lender; nor is the lender given title to the

property; though he has the right to sell the pledged property upon default.

*Black's Law Dictionary* 742 (6th ed. 1990).[3] Bowser's pledge of the ESOT stock to JCN fits within this definition. It is undisputed that the stock was pledged to JCN as security for the Bowser debt. Further, while the above-definition states that there generally is no physical transfer, it does not expressly exclude transactions, such as the present, where there is a physical transfer of the pledged property. Thus, under this basic definition, the Bowser stock falls within the definition of "hypothecate" in Section 351.245(2).

■ Defendants assert that Section 351.260(4) of the Revised Statutes of Missouri, rather than Section 351.245(2), controls this issue. Section 351.260(4), which governs the voting rights of pledged shares, provides that "a shareholder whose shares are pledged shall be entitled to vote such shares until the shares have been transferred into the name of the pledgee, and thereafter the pledgee shall be entitled to vote the shares so transferred." Defendants claim that Bowser is entitled to legally vote the pledged stock under this statutory provision because the shares have not been transferred into the name of JCN, the pledgee.

In rejoinder to Defendants' reliance on Section 351.260(4), Plaintiff maintains that Section 351.260(4) merely addresses the general situation where a pledgee is allowed to vote his or her stock even though it is pledged to a third party, such as a lending institution. Pursuant to the principle of statutory construction that the specific governs the general, Plaintiff asserts that the general provisions of Section 351.260(4) are trumped by the narrowly-tailored provisions of Section 351.245(2). *See, e.g., Bigger v. American Commercial Lines, Inc.,* 862 F.2d 1341, 1344 (8th Cir.1988). The Court agrees. If Section 351.260(4) were meant to apply to the present situation, where shares of the issuing corporation are pledged to the issuing corporation, there would have been no need to

---

**3.** *Black's Law Dictionary* is frequently relied upon as an aid in statutory construction by both the Eighth Circuit Court of Appeals and Missouri state courts. *See, e.g., Munz v. Michael,* 28 F.3d 795, 798 n. 3 (8th Cir.1994); *Stack v. United States,* 23 F.3d 1400, 1402 (8th Cir.1994); *Great Southern Savings & Loan Association v. Wilburn,* 887 S.W.2d 581, 585 (Mo.1994) (*en banc* ).

enact the specific provisions of Section 351.245(2), which prohibits the voting of shares "hypothecated" to the issuing corporation.

Moreover, the Court finds that the line drawn by Defendants between a "pledge" and a "hypothecation" is a distinction without substance. Defendants argue that because the stock certificates were physically delivered to JCN, the security arrangement between Bowser and JCN must be considered a "pledge," and therefore, Section 351.245(2) does not affect Bowser's voting rights. The converse of this argument is that if Bowser had retained possession of the stock certificates, the security arrangement between Bowser and JCN would be considered a "hypothecation," thus, precluding Bowser from voting under Section 351.245(2). However, as a practical matter, the legal effect of both a pledge and a hypothecation is exactly the same—to provide security for a debt. It is illogical to assume that the drafters of Section 351.245(2) intended the right to vote to revolve solely around the issue of possession of the pledged property. In addition, as previously noted, physical possession is not an essential element under the basic definition of hypothecate.

■ Finally, Defendants suggest that when Section 351.245(2) is given its logical interpretation, it is only intended to prohibit a corporation from voting its treasury stock. However, Section 351.245(2) prohibits the voting of any shares "belonging *or* hypothecated to the corporation which issued the shares." (emphasis added). The parties concede that the Bowser shares in question are not treasury stock and, thus, do not "belong" to JCN. Therefore, the inclusion of the word "hypothecated" clearly indicates that the legislature intended this statute to protect against more than just the voting of treasury stock.

■ In summary, the Court finds that Section 351.245(2) prohibits Defendant McCarthy from voting the Bowser stock that is pledged to JCN.[4] Consequently, Plaintiff

has shown a very strong likelihood that it will succeed on the merits of this issue. Furthermore, because the interpretation of Section 351.245(2) is essentially a question of law, the probability that this preliminary determination will be upheld after a final hearing is greatly increased.

### B. Irreparable Harm

■ The second preliminary injunction factor requires Plaintiff to prove that there is a threat of irreparable harm. Based on the above analysis, the Court is satisfied that Plaintiff will suffer irreparable harm if the annual meeting is not postponed because it will be completely frustrated in its attempt to nominate directors or propose items of business. "Courts have consistently found that corporate management subjects shareholders to irreparable harm by denying them the right to vote their shares or unnecessarily frustrating them in their attempt to obtain representation on the board of directors." *International Banknote Co. v. Muller,* 713 F.Supp. 612, 623 (S.D.N.Y.1989). *See also, e.g., Beztak Co. v. Bank One Columbus,* 811 F.Supp. 274, 283–84 (E.D.Mich.1992); *ER Holdings, Inc. v. Norton Co.,* 735 F.Supp. 1094, 1101–02 (D.Mass.1990); *Danaher Corp. v. Chicago Pneumatic Tool Co.,* 1986 WL 7001, at *14 (S.D.N.Y. June 16, 1986); *Treco, Inc. v. Land of Lincoln Savings & Loan,* 572 F.Supp. 1447, 1450 (N.D.Ill.1983).

Moreover, the determination that the Bowser shares, which represent approximately 65% of all outstanding JCN shares, are ineligible to vote fundamentally alters the entire voting landscape of JCN. With the scheduled annual meeting now only two weeks away, Plaintiff does not have sufficient time to make other shareholders aware of the changed voting circumstances or the rejection of the amended bylaws. In addition, JCN's proxy solicitation may be tainted by the inaccurate perception that Defendant McCarthy has an overwhelming voting advantage. *See Packer v. Yampol,* C.A. No. 8432, 1986 WL 4748 at *7 (Del.Ch. April 18, 1986). Due to the impending time con-

---

4. Because the Bowser shares are deemed ineligible to vote under Section 351.245(2), the Court finds it unnecessary at this time to address Plaintiff's argument that the sale of the ESOT stock to Bowser was void under Section 351.165.

straints imposed by the April 24, 1995 annual meeting, Plaintiff will suffer irreparable harm if the Court does not grant this injunction.

### C. Balancing Injuries

The third factor requires the Court to balance the potential harm to Plaintiff against the injury that granting the injunction will inflict on Defendants or other interested parties. Plaintiff asks that the JCN annual meeting be enjoined until all interested parties can be apprised of the fact that the Bowser shares are ineligible to vote and Plaintiff has an opportunity to nominate director candidates and propose items of business. Unless an injunction is granted, Plaintiff's ability to participate meaningfully in the annual meeting will be compromised.

This concern must be balanced against any potential harm to Defendants as a result of the injunction. The primary hardship to Defendants is a delay in conducting the annual shareholder meeting. Although Defendants will be put to the expense of cancelling and then resetting the annual meeting, this inconvenience will not inflict irreparable harm. The balance favors Plaintiff.

### D. The Public Interest

The Court finds that the issuance of a preliminary injunction is in the public interest. An injunction will further the interests of corporate democracy and shareholder participation in the management of JCN. This case raises significant questions concerning minority shareholder rights and shareholder voting eligibility under Missouri corporate law. The public interest in corporate democracy, as evidenced in the Missouri Constitution and numerous statutes, favors the issuance of an injunction.

### III. RELIEF REQUESTED

The Court will not interpose itself in the corporate affairs of JCN any more then necessary. Only such temporary relief as will avoid irreparable harm until a final hearing on this matter will be ordered. Plaintiff asks the Court to preliminarily enjoin Defendants from: 1) enforcing the challenged portions of the amended bylaws; 2) allowing Bowser to exercise its voting rights in JCN stock that is

pledged to JCN; 3) conducting any meeting of the shareholders of JCN; 4) soliciting or exercising any JCN shareholder proxies; 5) selling, transferring, exchanging or issuing any JCN stock to or from any individual defendant in this action or their affiliates; 6) paying any dividends to Bowser on the ESOT stock; or 7) entering into or closing any transaction with any defendant herein or their affiliates except in the ordinary course of business.

In light of the legal determinations regarding the amended bylaws and the voting rights of the Bowser stock, it is essential that the annual shareholder meeting, presently scheduled for April 24, 1995, be enjoined. However, certain other relief requested by Plaintiff will not be ordered. Specifically, Plaintiff has raised questions about certain real estate arrangements between Defendant McCarthy and JCN. Plaintiff contends that these and other transactions between Defendant McCarthy and JCN constitute insider transactions. However, because this action is not a derivative suit, the Court will not provide relief from or inquire as to the propriety of such transactions.

Plaintiff also requests that the Court enjoin the payment of any JCN dividends to Bowser on the ESOT stock. However, such relief is not appropriate at this time as the evidence only supports enjoining the Bowser stock from voting, not from receiving dividends. More importantly, the payment of dividends is not an irreparable proposition.

### IV. RELIEF ORDERED

Based on the foregoing findings, it is therefore

ORDERED that Plaintiff's motion for preliminary injunction is GRANTED. It is further

ORDERED that the Board of Directors of Defendant J.C. Nichols Company is preliminarily ENJOINED from enforcing §§ 7(a)(ii) and 7(a)(iii) of the corporation's amended bylaws. It is further

ORDERED that Defendant Lynn McCarthy is preliminarily ENJOINED from exercising his voting rights in the J.C. Nichols

Company stock that is controlled by the Bowser Limited Partnership. It is further

ORDERED that Defendant Lynn McCarthy is preliminarily ENJOINED from assigning, or otherwise disposing of, his voting rights in the J.C. Nichols Company stock that is owned by the Bowser Limited Partnership without leave of this Court. It is further

ORDERED that the annual shareholder meeting of Defendant J.C. Nichols Company, currently scheduled for April 24, 1995, is hereby ENJOINED. It is further

ORDERED that the Board of Directors of Defendant J.C. Nichols Company is hereby ENJOINED from conducting any other meeting of its shareholders until after the hearing for permanent injunction in this matter. It is further

ORDERED that Defendant J.C. Nichols Company is ENJOINED from issuing, soliciting or exercising any shareholder proxy statements until after the hearing for permanent injunction in this matter. It is further

ORDERED that the current Board of Directors of Defendant J.C. Nichols Company shall remain in place and shall act in the best interests of all shareholders. It is further

ORDERED that this action is set for a permanent injunction hearing and final disposition beginning on Tuesday May 30, 1995 at 8:30 a.m. It is further

ORDERED that by April 21, 1995, Plaintiff and Defendants SHOW CAUSE why two related actions pending in this Court, *Norberg v. J.C. Nichols, et al.*, Case # 95–0053, and *Medina, et al. v. McCarthy, et al.*, Case # 95–0075, should not be consolidated with the present case and disposed of at the permanent injunction hearing on Tuesday May 30, 1995. It is further

ORDERED that unless good cause is shown, the Court will conduct a hearing at 1:00 p.m. on Tuesday April 25, 1995 to establish a schedule for expedited discovery procedures and related pre-trial deadlines in the consolidated action. It is further

ORDERED that bond is hereby set in the amount of $50,000, pursuant to Federal Rule of Civil Procedure 65(c). It is further

ORDERED that Plaintiff remit a bond in the above amount to the Clerk of the Court for the Western District of Missouri no later than 5:00 p.m. on Thursday April 13, 1995.